FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2020 JAN 24  PM 4: 32

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. ___'20 - CV - 00208___

(To be supplied by the court)

Tiffany Grays _____, Plaintiff

v.

See Section B _____,

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Tiffany Grays   PO Box 472322 Aurora, CO 80047
(Name and complete mailing address)

720-623-1883  Legalgrays@gmail.com
(Telephone number and e-mail address)

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:   Kittredge CO Partners, LLC   1900 W. Littleton Boulevard,
(Name and complete mailing address)   Littleton, CO 80120

(404) 965-3988
(Telephone number and e-mail address if known)

Defendant 2:   Cortland Management, LLC   3424 Peachtree Rd, Ste. 300
(Name and complete mailing address)   Atlanta, GA 30326

(404) 965-3988
(Telephone number and e-mail address if known)

Defendant 3:   Unknown Kittredge CO Partners, LLC Co-Conspirators   1900 W. Littleton Boulevar
(Name and complete mailing address)   Littleton, CO 80120

(404) 965-3988
(Telephone number and e-mail address if known)

Defendant 4:   Unknown Cortland Management, LLC Co-Conspirators   3424 Peachtree Rd.
(Name and complete mailing address)   Ste. 300
   Atlanta, GA 30326

(404) 965-3988
(Telephone number and e-mail address if known)

Defendant 5: Ashley Bussard   4699 Kittredge St,
(303) 362-0300 | ashley.bussard@cortlandpartners.com   Denver, CO 80239

Defendant 6: Kayla Hedemark   4699 Kittredge St.
(303) 362-0300   Denver, CO 80239

2

Defendant 7: RealPage, Inc   7700 E ARAPAHOE RD STE 220
(877) 325-5387   CENTENNIAL, CO 80112-1268

**C.**   **JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☒   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

42 U.S.C. § 1985          42 U.S.C. § 3613     15 U.S.C. §§ 1681 et seq,

28 U.S.C. § 1367, 42 U.S.C. § 1983

☐   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

**D.   STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

~~CLAIM ONE:~~ _____

       Supporting facts:

# See additional pages for all claims

4

~~CLAIM TWO~~: _____

Supporting facts:

# See additional pages for all claims

### E. REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

## See additional pages attached

### F. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's Signature)

01-24-2020
_____
(Date)

(Revised December 2017)

6

# D.   STATEMENT OF CLAIMS

# INTRODUCTION

1.      **COMES NOW**, Tiffany Grays, *pro se*, ("Plaintiff" or "she" or "her") makes claims

against Defendants: Kittredge CO Partners, LLC; Cortland Management, LLC, Ashley Bussard,

Kayla Hedemark (collectively "Lakecrest"); Unknown Kittredge CO Partners, LLC Co-

Conspirators; Unknown Cortland Management, LLC Co-Conspirators (collectively "Co-

Conspirators"); and RealPage, Inc. (collectively "Defendants") as Defendants have conspired to

deprive Plaintiff of protections against unlawful search under the Fourth Amendment of the

Constitution of the United States of America, violations of the Equal Protection Clause of the

Fourteenth Amendment of the Constitution of the United States of America, in violation of 42

U.S.C. § 1985(3), through violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b,

permissible purposes of consumer reports; in response to Plaintiff's charge of housing

discrimination, violations of 42 U.S.C. § 3613; and culminating with violations of the Equal

Credit Opportunity Act, 15 U.S.C. § 1691 et seq. and 12 C.F.R. 202 et seq. ("ECOA").

# BACKGROUND

2.      "Criminal records-based barriers to housing are likely to have a disproportionate impact

on minority home seekers. While having a criminal record is not a protected characteristic under

the Fair Housing Act, criminal history-based restrictions on housing opportunities violate the Act

if, without justification, their burden falls more often on renters or other housing market

participants of one race or national origin over another (i.e., discriminatory effects liability)[1]." As

many as 100 million U.S. adults – or nearly one-third of the population – have a criminal record

of some sort[2]. Across the United States, African Americans and Hispanics are arrested, convicted and incarcerated at rates disproportionate to their share of the general population[3].

# JURISDICTION & VENUE

3.      Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference *inter alia*:

4.      Jurisdiction of this Court attains pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S. Code § 3614; 15 U.S.C. § 1681p, 15 U.S.C. § 1691c(h); 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1355(a). Claims for relief that are based on the Colorado Constitution, have the same nucleus of operative facts and are so related to the federal-law claims that they form part of the same case or controversy. This Court has jurisdiction over the supplemental state-law claims pursuant to 28 U.S.C. § 1367. Fees and costs are conferred by 42 U.S.C. § 1988.

5.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391, due to a substantial part of the events or missions giving rise to the claims in this matter occurred in the State of Colorado.

---

[1] https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF

[2] Id. citation 1 at Id. ¶ 2, citing Bureau of Justice Statistics, U.S. Dep't of Justice, Survey of State Criminal History Information Systems, 2012, 3 (Jan. 2014), available at https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf.

[3] Id. citation 1 at Id. ¶ 3.

# PARTIES

6.      Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference *inter alia*:

7.      *Pro se* Plaintiff, Ms. Tiffany Grays, an individual consumer over the age of 18, a Colorado Native who resides in Colorado and has rented from multiple multi-family complexes in Colorado; never having been charged nor convicted of any crimes pertaining to her being a direct threat to the health or safety of other individuals or whose tenancy has resulted in substantial physical damage to the property of others. Plaintiff conducted all business transactions with the Defendants in Colorado. Plaintiff previously filed a charge of housing discrimination against Lakecrest, which resulted in a finding of no probable cause. Plaintiff appealed that finding and was provided a letter affirming no probable cause on July 29, 2019. Plaintiff brings her claims of housing discrimination along with additional claims in this instant case which stem from a separate transaction; the intrusion of Lakecrest into the Plaintiff's consumer credit report in 2019; months after the alleged discrimination occurrence.

8.      Defendant Kittredge CO Partners, LLC and Defendant Cortland Management, LLC, both foreign liability companies, jointly own and manage the property which facilitated and conducted the alleged violations against Plaintiff, Lakecrest at Gateway Park. Lakecrest at Gateway Park is located at 4699 Kittredge St, Denver, CO 80239, has 440 units, and is a multi-family community. Employees of Lakecrest at Gateway Park are considered employees of Kittredge CO Partners, LLC and Cortland Management, LLC. Kittredge CO Partners, LLC and Cortland Management, LLC. regularly access consumer reports for the determinization of creditworthiness and ability to become residents at Kittredge CO Partners, LLC and Cortland

Management, LLC properties, including Lakecrest at Gateway Park. Kittredge CO Partners, LLC and Cortland Management, LLC are jointly and severally liable for the conduct of their employees.

9.      Defendants Unknown Kittredge CO Partners, LLC Co-Conspirators and Defendants Unknown Cortland Management, LLC Co-Conspirators (collectively "Co-conspirators") are being named in their individual and professional capacities, are likely located in various locations, were or are employees, contractors, sub-contractors, and/or third-party service providers for Kittredge CO Partners, LLC and/or Cortland Management, LLC; and are in the agency of Kittredge CO Partners, LLC and/or Cortland Management, LLC. Unknown Kittredge CO Partners, LLC Co-Conspirators and Unknown Cortland Management, LLC Co-Conspirators' actions are arbitrary in that they failed the Plaintiff, by failing to adhere to terms stipulated by law and when confronted acted to further deprive Plaintiff of her privacy and her ability to receive justice so owed. Co-conspirators are being named in her individual and professional capacities and may or may not have participated in providing fraudulent documents in response to Colorado Civil Rights Division requests for information. Unknown Kittredge CO Partners, LLC Co-Conspirators and Unknown Cortland Management, LLC Co-Conspirators are considered "others acting "under color of state law[s,]"" C.R.S. § 38-12-801, 15 U.S.C. § 1681 et seq., 15 U.S.C. § 1691 et seq., and 42 U.S.C. § 3613.

10.     Defendant Ashley Bussard, Caucasian, and at the time of Plaintiff's allegations was the Community Manager for Lakecrest at Gateway Park. Ms. Bussard was responsible for the denial of Plaintiff's application due to undisclosed criteria of having more than one misdemeanor. Ms. Bussard having aided the Plaintiff in her application, was aware of Plaintiff's color and race prior to making the adverse decision. Ms. Bussard is responsible for providing responses and

4

documents in response to Plaintiff's charge of housing discrimination; including but limited to

documents used to determine eligibility of applicants who failed to receive an initial approval or

denial and documents which express community resident statistics. Ms. Bussard is believed to be

a Co-Conspirator and is being named in her individual and professional capacity. Ms. Bussard is

considered "others acting "under color of state law[s,]"" C.R.S. § 38-12-801, 15 U.S.C. § 1681 et

seq., 15 U.S.C. § 1691 et seq., and 42 U.S.C. § 3613. Ms. Bussard was directly and extensively

involved in setting the approval or denial of housing applications.

11.     Defendant Kayla Hedemark, Caucasian, and at the time of Plaintiff's allegations was a

Leasing Consultant for Lakecrest at Gateway Park. Ms. Hedemark was the actual perpetrator of

Ms. Bussard's' disparate treatment of the Plaintiff, through the disparate impact of Ms. Bussard's

and Lakecrest's undisclosed policies and procedures. Ms. Hedemark made the phone call

informing the Plaintiff her application for housing had been denied because the Plaintiff had

"more than one misdemeanor." Ms. Hedemark is responsible for refunding the Plaintiff's

deposit, an action which is arbitrary to Lakecrest's application policies. Ms. Hedemark is

believed to be a Co-Conspirator and is being named in her individual and professional capacity.

Ms. Hedemark is considered "others acting "under color of state law[s,]"" C.R.S. § 38-12-801,

15 U.S.C. § 1681 et seq., 15 U.S.C. § 1691 et seq., and 42 U.S.C. § 3613.

12.     Defendant RealPage, Inc., a reseller of consumer credit reports, was founded in 1998, and

is based in Texas. The company offers tenant background screening services to property owners

and managers through its wholly owned subsidiary LeasingDesk. According to its website,

RealPage is "a leading global provider of software and data analytics to the real estate industry"

and its "advanced resident screening software solution puts the knowledge and pricing power

into" the hands of the property owner. The company boasts that it "currently serves nearly

12,500 clients worldwide from offices in North America, Europe and Asia." RealPage failed the

Plaintiff in by failing to shield the Plaintiff's consumer credit report from unauthorized

investigative inquiries.


# FACTS

13.     Restrictions on permissible access and use of consumer reports are well established in the

plain language of the FCRA, in the promulgations of the Federal Trade Commission and the

Consumer Financial Protection Bureau.

14.     Defendants held knowledge or should have known its duties under the FCRA. Any

reasonable user, creditor, and/or reseller that utilizes consumer reports knows about, or should

know about, and can easily discover the federal mandates arising under the FCRA.

15.     With the assistance of Ashley Bussard, Plaintiff applied for housing onsite at Lakecrest,

on or about July 24, 2018, through an application administered by RealPage.

16.     The housing application failed to state "more than one misdemeanor" would disqualify

applicants nor the ability for future investigative inquiries.

17.     The housing application has the following consent form to which the Plaintiff agreed:

**Consent Form**

I authorize LAKECREST AT GATEWAY PARK by Cortland to obtain reports from any consumer or
criminal record reporting agencies before, during, and after tenancy on matters relating to a
lease by the above owner. And to verify, by all available means, the information in this
application, including criminal background information, income history and other information
reported by employer(s) to any state employment security agency. Work history information
may be used only for this Rental Application.

18.     Based on the language in the consent form, the following must be true:

    a.  The Rental Application is not the same document as the lease.

    b.  The limitation on which reports may be obtained are constrained to:

        a.  Matters relating to a lease by the above owner; and/or

        b.  To verify, by all available means, the information in this application.

19.    Plaintiff therefore consented to Defendants use and procurement of Plaintiff's consumer or criminal report(s) in the following two conditions only:

    a.  Matters relating to a lease by the above owner; and/or

    b.  To verify, by all available means, the information in this application.

20.    Plaintiff's housing application did not ask or contain any statement regarding the Plaintiff's criminal history.

21.    Plaintiff made no representation as to her criminal history.

22.    Plaintiff's housing application was unlawfully denied by Lakecrest on or about July 25, 2018, by Kayla Hedemark, though Ashley Bussard's decision, which was arbitrarily based on "more than one misdemeanor."

23.    Prior to Plaintiff's application, Plaintiff was not informed that "more than one misdemeanor," would disqualify her from residency.

24.    The criminal background disclosers in the Rental Application states,

**Criminal History:** Cortland Management conducts background screening on all applicants, occupants, guarantors, and co-signers. Our investigation includes criminal background screening. It is possible an application may be denied due to criminal history. Cortland Management maintains a strict policy prohibiting registered sex offenders from residing within our communities. This community reserves the right to investigate lists of registered sex offenders in any manner including online, in newspapers, or by contacting state agencies.

25.    The Criminal History on the Rental Application fails to state three or more misdemeanors would disqualify an applicant or cause an applicant's application to come under additional scrutiny, if they possess three or more misdemeanors.

26.    For an unknown amount of time, Defendants' failure to disclose three or more misdemeanors would disqualify an applicant has resulted in minorities being disproportionately denied housing for reasons not based on creditworthiness or other objective data when compared to non-minorities.

27.    Defendants' business practice was to have potential residents come in a tour the property with an agent or representative of Defendants. Potential residents are advised they can apply online in the office or via personal device.

28.    Once an application is received and paid for, Defendants' business practice is to run criminal and credit inquiries against the information contained within the application. Upon receiving reports from the inquiries, Defendants would: 1) Automatically approve or deny the application; or 2) conditionally approve criminal histories for further consideration by Community Manager's if the applicants' criminal history presented with more than one misdemeanor.

29.    Upon receiving notification of the requirement for further consideration, the Community Manager who has historically been Caucasian, would then assess the applicants' crimes and determine eligibility against non-objective data including but not limited to race, color, income, and the Community Manager's personal desires and/or thoughts of the applicant's crimes.

There is consequently a casual connection between Defendants' business practices and the disparities in the impact and treatment of applicants who are minorities.

8

30.     Lakecrest's conditional approvals and an insufficient and/or irrelevant worksheet to determine final approval through the Community Manager, resulted in discriminatory policies and practices that: (a) allowed discretion to Community Manager's in determining an applicant's residential risk; (b) allowed approvals which were not based upon objective data, (c) did not require Community Managers to justify or document the reason(s) for denial; and (d) failed to adequately monitor for and fully mitigate effects of race and color disparities conditional approvals receiving final approvals.

31.     Lakecrest's policies and practices identified in the previous Paragraph were not justified by business necessity or legitimate business interests. Multiple less discriminatory alternatives or methods to ensure propriety available to Lakecrest and intently unused; versus these policies or practices. For example, Chase could have, but failed, to modify the discretion it allowed to Community Managers and how crimes were assessed in the conditional approval worksheet. Similarly, Lakecrest could have, but failed, to better monitor Community Managers use of and decisions based upon conditional approvals to discourage discrimination against based on applicant's race or color. There was no business necessity or legitimate business interest behind Lakecrest's decision to allow its Community Managers to engage in discrimination against rental applicants based on race and color. Moreover, Lakecrest's failure to adequately address discrimination in its rental practices encouraged discrimination to continue.

32.     Lakecrest had knowledge that the discretion it granted to Community Managers in its Rental Application policies and practices was being exercised in a manner that discriminated against African-Americans and minorities, but continued to implement its policies and practices with that knowledge; failing to fully eliminate their discriminatory impact. Lakecrest did not act

9

to identify or compensate applicants who were victims of its discriminatory rental housing policies or practices.

33.     Upon receiving the denial of housing, Plaintiff requested a copy of her consumer and criminal report which was used to make the denial decision and filed a charge of housing discrimination against Defendants with the Colorado Civil Rights Division, ("CCRD"), FH2019016495.

34.     Plaintiff requested and received a copy of the report which was used to make the decisions from RealPage.

35.     During the investigation by the CCRD, Plaintiff learned Defendants' criminal reports to qualify applicants seeks only crimes which were committed within the seven years previous to the application date.

36.     During the investigation by the CCRD, Plaintiff learned Defendants' conducted another inquiry and/or obtained or accessed the Plaintiff's consumer report, through RealPage, to formulate a secondary response to the CCRD.

37.     In fact, according to documents provided to the CCRD by Defendants, Defendants reused/re-obtained the Plaintiff's consumer reports on or about January 17, 2019.

38.     Plaintiff did not authorize Defendants' use of her consumer reports on or about January 17, 2019.

39.     The Plaintiff's consumer report which was reused/re-obtained by Defendants on or about January 17, 2019, was additional criminal history not previously reported in the original consumer report.

40.     The Plaintiff's consumer report which was reused/re-obtained by Defendants on or about January 17, 2019, was used by Defendants to justify the alleged disparate treatment of the Plaintiff.

41.     The information which was reused/re-obtained by Defendants on or about January 17, 2019, was therefore not caused by or related to:

a.  A lease by the above owner; and/or

b.  Verify, by all available means, the information in this application.

42.     Therefore, Defendants' use, procurement, and allowance of Plaintiff's consumer report, by Defendants on or about January 17, 2019, was in violation of the FCRA.

43.     Lakecrest is void of permissible purpose to access Plaintiff's consumer report outside of determination of Plaintiff's residential capabilities on or about July 24, 2018; as set forth under the FCRA, 15 U.S.C. § 1681b(a)(3).

44.     RealPage is void permissible purpose to permit Lakecrest to access Plaintiff's consumer report outside of determination of Plaintiff's residential capabilities, as set forth under the FCRA, 15 U.S.C. § 1681b(a)(3).

45.     Plaintiff became aware of the illegitimate inquiry in mid-2019.

46.     While Lakecrest's illicit inquiry substantiates the discriminatory conduct alleged in Plaintiff's charge of discrimination, in by unlawfully treating the Plaintiff though intentional indifference to Plaintiff's rights; the CCRD found no probable cause after appeal on July 29, 2019, giving the Plaintiff two years to file her civil suit.

47.     Defendants knew or should have known that its actions violated the FCRA, as the permissible use of the Plaintiff's consumer report had expired the previous year.

48.     Lakecrest admits the denial of Plaintiff's Rental Application was arbitrary in that Lakecrest refunded the Plaintiff's deposit, while Lakecrest has a policy in which deposits and application fees are not refunded for applications which are denied.

49.     Minorities are disproportionately charged and convicted of crimes in the United States[3]. Therefore, disqualification of housing based on criminal convictions disproportionately affects minority communities; as was the Plaintiff[1].

## CAUSES OF ACTION

50.     Unless otherwise noted, each Count is against all Defendants. Plaintiffs re-alleges the preceding paragraphs set forth above and herein and incorporate them herein all Counts by reference *inter alia*:

### COUNT ONE:

### FCRA VIOLATIONS

51.     Lakecrest and Co-conspirators are "users of consumer reports" as contemplated by the FCRA, in 15 U.S.C. § 1681a(d)(1).

52.     RealPage is a reseller under § 1681e.

53.     Despite knowing of its legal obligations, Defendants acted recklessly and consciously in breaching its known duties; resulting depriving Plaintiff of her rights under the FCRA.

54.     Defendants violated 15 U.S.C. § 1681b(f) by willfully and/or recklessly obtaining or using Plaintiff's consumer credit report without a permissible purpose or authorization under the FCRA.

55.     The unauthorized report obtained by Lakecrest is considered investigative under § 1681a(e).

56.     RealPage and Lakecrest violate § 1681d by:

   a.  Procuring or causing to be prepared an investigative consumer report absent clearly and accurately disclosing to the Plaintiff an investigative consumer report was being made, in violation of § 1681d(a)(1);

   b.  Failing to provide the Plaintiff a statement informing her of rights to request additional disclosures, in violation of § 1681d(a)(1);

   c.  Failing to provide a written summary of the rights of the consumer prepared pursuant to section 1681g(c); in violation of §§ 1681d(a)(1) and 1681g(c);

   d.  Failing to establish and follow reasonable procedures to ensure that Lakecrest, RealPage's customers' access to Plaintiff's consumer report, was resold only for permissible purposes, including failure to obtain from Lakecrest, in violation of § 1681d(a)(2):

           (1) the identity of all end-users;

           (2) certifications from all users of each purpose for which reports will be used; and

           (3) certification that reports will not be used for any purpose other than the purpose(s) specified to the reseller; and/or

e. Including information that related to an arrest without verifying the accuracy in violation of § 1681d(d)(3).

57. Lakecrest violated 15 U.S.C. § 1681o by negligently obtaining or using the consumer files without a permissible purpose or authorization under the FCRA.

58. Defendants had not received a request by the head of a State or local child support enforcement agency, was not requested to provide the information to an agency administering a State plan, nor was there just cause under any other applicable Federal or State law.

59. As a result of the above violations of the FCRA, Defendants invaded Plaintiff's privacy.

60. Plaintiff's damages caused as direct and foreseeable consequences of these breaches, including Plaintiff's physical injuries of Fibromyalgia; severe emotional distress, mental injuries and anguish, past and future economic and non-economic losses; pain and suffering, and other similar injuries. These injuries are permanent and at times are disabling, incapacitating, crippling and humiliating. Plaintiff has incurred expenses for therapy, medicine, medical treatments, and other similar expenses; and will continue to incur these expenses into the future; in an amount to be proven at trial.

61. As a result of these FCRA violations, Defendants are each liable to Plaintiff for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of the violations alleged herein, and for fees and costs pursuant to §1681n and §1681o.

62. Plaintiff believes violation calculations are as follows:

1. Each Co-Conspirator: 2

2. Each violation line published: 30

3. Days since housing denial through date of filing, up to and including maximum statutory damages: +/$528-$1,000

Total = 2x60x528 = $31,680

## COUNT TWO:

## FOURTH AMENDMENT VIOLATIONS (42 U.S.C. § 1983)

## CONSITUTIONAL GUARANTEE AGAINST UNLAWFUL SEARCHES AND SEIZURES

63.    Plaintiff has Constitutional Right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

64.    Plaintiff has a constitutionally protected right to be secure in her papers and effects against unreasonable searches and seizures.

65.    Defendants perpetrated this violation of Plaintiff's rights under the color of law and were conducted within the scope of their official duties.

66.    Defendants in accessing Plaintiff's consumer report though impermissible reasons, unlawfully subjected Plaintiff to an unreasonable search of her consumer report.

67.    Defendants abused trust and authority by using Plaintiff's private information provided only for approval of her housing application, to search her consumer credit report at a later time; to formulate a response to the Colorado Civil Rights Division.

68.    Plaintiff permitted Defendants' use her private information for the purposes of approving or denying Plaintiff's application for housing in July 2018, only; which LakeCrest denied in July 2018.

69.     Defendants knew or should have known that state law, the FCRA, and the United States Constitution forbade the use and search of a consumers' private information and consumer credit report without the expressed consent of that consumer. Defendants nonetheless continued their plight to harm the Plaintiff.

70.     Lakecrest's actions were motivated by mendacity and intent to harm and punish the Plaintiff for engagement in due process.

71.     The search commenced by Lakecrest and completed by and through RealPage violated Plaintiff's constitutional rights.

72.     The unlawful use and search were the legal and proximate cause of Plaintiff's injuries.

73.     Through facts and circumstances confronting Defendants, Defendants' actions, as described herein, were overtly unreasonable, willful and wanton.

74.     Defendants' violations as described herein, were meant to intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America; causing the Plaintiff *inter alia*: mental, physical, financial, and emotional damages in an amount to be proven at trial.

75.     Defendants' conduct, as described herein, violated Plaintiff's clearly established rights, of which reasonable people in Defendants' position knew or should have known.

## COUNT THREE: LAKECREST
## FOURTEENTH AMENDMENT VIOLATIONS (42 U.S.C. § 1983)
## VIOLATION OF THE EQUAL PROTECTION CLAUSE

76.   As described herein, Lakecrest's actions, under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the Constitution and law.

77.   LakeCrest discriminated against the Plaintiff, in whole or in part, because of her status as having "more than one criminal conviction," being dark in color, being African-American, having a low economic status, and in retaliation for participation in protected activities; denying Plaintiff equal protection under the law as required under the Fourteenth Amendment to the U.S. Constitution.

78.   Plaintiff's private information was used to search her consumer report outside of the application period, due to no other reason but Plaintiff's participation in due process, alleging Lakecrest's discrimination in housing.

79.   Other applicants for housing and/or chargers of discrimination were not subjected to the abuses Plaintiff has endured. The difference in treatment was due in whole or in part, to Plaintiff's status as having "more than one criminal conviction," being dark in color, being African-American, having a low economic status, and in retaliation for participation in protected activities.

80.   Applicants' who were denied did not have their consumer reports accessed after denial. Likewise, applicants who were approved and did not become a resident at Lakecrest did not have their consumer report accessed after determination was made. Lakecrest's abusive conduct was reserved for applicants who believe Lakecrest's conduct is discriminatory and contest the validity of housing denials based upon undisclosed requirements; as a dark-skinned African-American, as is Plaintiff.

81.     Lakecrest's decision to treat applicants who complain of discrimination worse than all other applicants is unconstitutional.

82.     Lakecrest's decision to provide fraudulent documents was meant to deprive the Plaintiff of the equal enjoyment and benefit of due process, justice.

83.     Lakecrest is void of lawful allowance for its conduct.

84.     The acts or omissions of Lakecrest were conducted within the scope of their official duties and employment under color of law.

85.     Lakecrest's violations as described herein, were meant to intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America; causing the Plaintiff *inter alia*: mental, physical, financial, and emotional damages in an amount to be proven at trial.

86.     Lakecrest's conduct, as described herein, violated the clearly established rights of Plaintiff of which reasonable people in Defendants' position knew or should have known.

## COUNT FOUR: LAKECREST
## CONSPIRACY Violations of 42 U.S.C. § 1985(3)

87.     Co-Conspirators, Unknown Kittredge CO Partners, LLC Co-Conspirators and Unknown Cortland Management, LLC Co-Conspirators conspired to deprive the Plaintiff of her rights, privileges, and protections afforded through FCRA, Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1985(3).

88.     Unknown Kittredge CO Partners, LLC Co-Conspirators and Unknown Cortland Management, LLC Co-Conspirators conspired to use the Plaintiff's private information to access her consumer report without her authorization, to justify the unlawful denial of housing to the

Plaintiff and retaliate against the Plaintiff for her complaint of discrimination through the invasion of privacy and broadcasting the private information; depriving the Plaintiff of her rights against unlawful search and seizure under the Fourth Amendment of the Constitution of the United States of America; Equal Protection under the Fourteenth Amendment of the Constitution of the United States of America; all in violation of 42 U.S.C. § 1985(3), through violations of 15 U.S.C. § 1681b; thereby failing to afford the Plaintiff the same options as other applicants.

89.     As a result of Defendants' conspiracy, Plaintiff has been injured in her person, property, and privacy; depriving Plaintiff of her rights afforded under FCRA, Fourth and Fourteenth Amendments of the United States Constitution.

## COUNT FOUR: LAKECREST
## INTRUSION UPON SECLUSION

90.     Lakecrest's intentional electronic invasion into the private affairs of the Plaintiff's consumer credit report in or around mid-2019, was unauthorized by the Plaintiff.

91.     Reasonable persons would defer unauthorized access and use of their consumer credit report as offensive.

92.     Reasonable persons would defer unauthorized access and use of their consumer credit report to respond to claims of housing discrimination as offensive.

93.     The Plaintiff's consumer credit report is a private matter; only available through the Plaintiff's explicit consent and its use only for purposes under which consent was given.

94.     The manner in which Lakecrest accessed the Plaintiff's consumer credit report outside of purpose granted and previously fulfilled was unreasonable as it was unlawful and unauthorized by Plaintiff.

95.     The manner in which Lakecrest accessed the Plaintiff's consumer credit report outside of purpose granted and previously fulfilled was for an illicit ill-purpose of depriving the Plaintiff and all other minorities access to equal housing; depriving the Plaintiff of the benefit of due process.

96.     Lakecrest transmitted the private information contained in the report to the Colorado Civil Rights Division for impermissible purposes and without Plaintiff's consent.

97.     Plaintiff finding out, after the fact, her privacy has been invaded by Lakecrest, came as a surprise; frightened the Plaintiff; disturbed and angered the Plaintiff; triggering and significantly contributing to the Plaintiff's Post-Traumatic Stress Disorder.

98.     As a direct result of Lakecrest's intrusion, Plaintiff has suffered *inter alia* mental anguish, pain and suffering, and multiple losses.

## COUNT FIVE:
## BREACH OF FIDUCIARY DUTY

99.     As Users of Consumer Credit reports, Defendants held duties outlined by law.

100.    As Furnishers, Defendants held duties outlined by law.

101.    As Resellers of consumer credit reports, RealPage held duties outlined by law

102.    As this issue concerns a consumer credit transaction, Defendants held duties outlined by law.

103.    As Defendants regularly engaged in trade, both nationally and by interstate, Defendants held duties outlined by law.

104.    Defendants were acting as a fiduciary to the Plaintiff with respect her housing application and consumer credit report.

105.    Based on the foregoing, Defendants breached duties owed to Plaintiff, including but limited to keeping information contained on the Plaintiff's consumer credit report confidential.

106.    As a result of Defendants' breach of fiduciary duties, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

107.    The aforementioned injuries, losses and damages of the Plaintiff were caused by Defendants breach of fiduciary duties, in an amount to be proven at trial.

## COUNT SIX:
## BREACH OF CONTRACT

108.    The housing application submitted by Plaintiff to Lakecrest, through RealPage, constitutes a contract.

109.    Plaintiff performed in accordance with terms stated or was excused from nonperformance by Defendants' misconduct alleged herein.

110.    RealPage breached their contract with the Plaintiff in by arbitrarily and unnecessarily, permitting Lakecrest to access the Plaintiff's consumer credit report multiple times, after the application period had expired and the consumer credit report had already been accessed once.

111.     Lakecrest breached their contract with the Plaintiff in by arbitrarily and unnecessarily, accessing the Plaintiff's consumer credit report multiple times, after the application period had expired, the permissible use had been previously conducted, and the use was not related to or for the original authorized purpose, to approve the Plaintiff for housing.

112.     Plaintiff's reliance upon Defendants' representations in the contract and Defendants' direct, reasonable and foreseeable consequences has resulted in Defendants' breaches; causing Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences of Defendants' breaches.

113.     Plaintiff is entitled to damages proven through trial.

114.     Plaintiff is entitled to her reasonable fees and costs.

## COUNT SEVEN:

## Violations of the Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-301, et seq. ("UCC")

115.     C.R.S. § 4-1-304, Obligation of Good Faith, Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement.

116.     Colorado recognizes an obligation to conducting all commerce in good-faith.

117.     Lakecrest's use of Plaintiff's private information for impermissible access to the Plaintiff's consumer credit report; arbitrarily authorized by RealPage are violations of the covenant of good faith and fair dealing.

118.    As direct, reasonable and foreseeable consequence of these breaches, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

## COUNT EIGHT:
## NEGLIGENCE

119.    As Users of Consumer Credit reports, Defendants held duties outlined by law.

120.    As Furnishers, Defendants held duties outlined by law.

121.    As this issue concerns a consumer credit transaction, Defendants held duties outlined by law.

122.    As Defendants regularly engaged in trade, both nationally and by interstate, Defendants held duties outlined by law.

123.    Defendants were acting as a fiduciary to the Plaintiff with respect her housing application and consumer credit report.

124.    Based on the foregoing, Defendants breached duties owed to Plaintiff.

## Outrageous Conduct

125.    By and through actions all paragraphs and Counts, Defendants' conduct is outrageous.

126.    As a result of Defendants' breach of fiduciary duties and outrageous conduct, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

127.    Plaintiff is entitled to damages proven through trial.


# COUNT TEN:

# Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ("CCPA")

128.    Defendants conduct alleged in this Complaint and relating to its unlawful access or failure to correct errors on the Plaintiff's consumer credit report violates the Colorado Consumer Protection Act because they (1) constitutes unfair and/or deceptive acts or practices; (2) are committed in the course of Defendants' business; (3) have a pervasive public interest impact and have the potential to harm a substantial portion of the public; and (4) have caused injuries to the Plaintiff.

129.    Lakecrest's denial of housing violates CCPA.

130.    Defendants' violations of the CCPA were committed in bad faith, evident in their failure to correct multiple times.

131.    RealPage exhibits further deceptive behavior by failing to provide Plaintiff information requested, and failing to provide dispute information to CRA as stated.

132.    Plaintiff's injuries were unavoidable as Defendants' hold all the power and unilaterally control the information reported, the request to correct, and the ability to correct themselves. Plaintiff has suffered damages as a direct result of Defendant's violations of the CCPA.

133.    Defendants are liable to Plaintiff in amount to be determined at trial, including statutory treble damages. Plaintiff respectfully requests this Court award them the following damages pursuant to Colo. Rev. Stat. § 6-1-113(2)(a).  The greater of:

i.      the amount of actual damages sustained; or

ii.     five hundred dollars; or

iii.    three times the amount of actual damages sustained.

134.    Plaintiff respectfully requests that this Court award her fees and costs associated with this

action pursuant to Colo. Rev. Stat. § 6-1-113(2)(b) and enjoin Defendants from continued

unlawful conduct alleged.


## COUNT ELEVEN:

## Violations of Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, et seq. ("UCCC"):

135.    By consenting to a consumer credit check though an application for housing, Defendants

and Plaintiff participated in a "Consumer Credit Sale" as defined in C.R.S. § 5-1-301(11)(a);

thereby a "Consumer credit transaction" C.R.S. § 5-1-301(12).

136.    The written agreement did not permit Defendants to access her consumer report for

anything other than determination of housing eligibility in July 2018.

137.    Defendants did not obtain consent from the Plaintiff prior to using her private

information to access her consumer report for an additional consumer credit transaction any time

after July 2018.

138.    The housing application provided to Plaintiff was deficient, ineffective, deceptive,

conducted in bad-faith, unfair, unconscionable, and misleading in that it does not state RealPage

could permit unlimited access to the consumer credit report, nor that Lakecrest could access the

139.   Plaintiff's consumer credit report at any time and Plaintiff was not informed of "more than one misdemeanor," unqualifying Plaintiff.

140.   Lakecrest's denial of housing violates UCCC.

141.   By and through conduct of Defendants described in all paragraphs, Defendants conduct can be construed as unconscionable, in violation of C.R.S. § 5-5-109 and C.R.S. § 5-3-210.

142.   The reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

143.   Plaintiff is entitled to damages proven through trial.

144.   Plaintiff is entitled to her reasonable fees and costs.

## COUNT ELEVEN:
## BREACH OF CONFIDENTIALITY: LAKECREST

145.   Lakecrest's intrusion into Plaintiff's consumer credit report was not the only privacy violation. Lakecrest broadcasted the private information obtained through the intrusion to the Colorado Civil Rights Division.

146.   Lakecrest held multiple duties to keep the Plaintiff's information private and to use the private information for authorized purposes only.

147.   RealPage held a duty to ensure that Plaintiff's consumer report was accessed for permissible purposes.

148.    Lakecrest and RealPage breached the confidentiality owed through the application and laws.

149.    Plaintiff's reliance upon Defendants' representations in the contract and Defendants' direct, reasonable and foreseeable consequences has resulted in Defendants' breaches; causing Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to inter alia emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences of Defendants' breaches.

150.    Plaintiff is entitled to damages proven through trial.

151.    Plaintiff is entitled to her reasonable fees and costs.

## COUNT TWELVE: LAKECREST
## DISCRIMINATION AND RETALIATION IN RENTAL HOUSING (42 U.S.C. § 3601 et seq)

152.    Lakecrest at Gateway Park is a multi-family rental complex with 440 units.

153.    Plaintiff was an applicant for rental housing at Lakecrest on or about July 24, 2018.

154.    Upon the conclusion of Plaintiff's application, Plaintiff chose a specific apartment and provided Lakecrest a monetary deposit for said dwelling.

155.    Plaintiff did not pose a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.

156.    Ms. Bussard evaluated the risk of approving applicants with criminal histories which were conditionally approved and not automatically denied. The Rental Application provided "it is possible an application may be denied due to criminal history."

157.    Lakecrest's Criminal Screening Decision Worksheet for Conditional Approvals provided to the CCRD, contains criteria which were beyond the scope of the Rental Application; making the worksheet fictious in nature; or if true, a declaration from Defendants on additional failures to disclose purposes of intended use of consumer reports to applicants for housing; as named Plaintiff.

158.    Plaintiff challenges Lakecrest's facially discriminatory actions and the effects of facially neutral actions of Lakecrest.

159.    Lakecrest's rental practices allowed Lakecrest to have information about the Plaintiff's and other applicants' race and color.

160.    Lakecrest's alleged restrictions were blanket stereotypes against protected classes under Title VII, dark-skinned African-Americans with more than one misdemeanor, as was Plaintiff.

161.    Lakecrest refused to rent to the Plaintiff after making a bona fide offer, in violation of 42 U.S.C. 3604(a); due to her race and color.

162.    In violation of 42 U.S.C. 3604(b), Lakecrest's rental practices and procedures discriminate against persons in the terms, conditions, or privileges of renting a dwelling with Lakecrest, because of race and color, by:

   a.  disproportionately affecting minorities through a scoring system which is not bona fide and allows disparate impact through the discretion of its users, as was Plaintiff;

   b.  disproportionately affecting minorities through undisclosed approval requirements which are based solely upon criminal convictions, as was Plaintiff;

   c.  disproportionately affecting minorities by failing to consider mitigating factors regarding said criminal convictions, as was Plaintiff.

      d.  Failing to be tailored to particularized concerns about individual residents.

163.    Lakecrest's denial of Plaintiff's application was not a reasonable restriction.

164.    Lakecrest's actions, policies and practices, as alleged herein, constitute Discrimination on the basis of race or ethnicity in making available, or in the terms or conditions of, residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a);

165.    The unlawful search and release of information contained within the Plaintiff's consumer credit report, was done in retaliation, to coerce, intimidate and interfere with the Plaintiff's pursuit of justice and equality in violation of 42 U.S.C. § 3617.

166.    Lakecrest's discriminatory actions were meant to discriminate against the Plaintiff and minorities in general, as Defendants' monitoring and/or compliance errors to remedy discriminatory practices against minorities, and Plaintiff's charge of discrimination were sufficient to put it on notice of widespread discriminatory housing practices. Even when noticed of the disparities, Defendants failed to act in determining the full scope of and eliminating the disparities in rental practices and disclosures; including failing to engage in adequate efforts to remedy the impact of those disparities upon applicants.

167.    Lakecrest's actions causing Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences.

168.    Lakecrest's pattern or practice of discrimination has been intentional, willful, and has been implemented with reckless disregard for the rights of African-American and minority rental applicants.

169.   Plaintiff is entitled to all damages in accordance with 42 U.S.C. § 3631.

## COUNT THIRTEEN: LAKECREST
## DISCRIMINATION AND RETALIATION IN EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. § 1691 et seq)

170.   By and through acts described in all Counts and Paragraphs, Lakecrest has discriminated against applicants with respect to credit transactions on the basis of race or ethnicity in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(l).

171.   Lakecrest's actions causing Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences.

172.   Lakecrest's pattern or practice of discrimination has been intentional, willful, and has been implemented with reckless disregard for the rights of African-American and minority rental applicants.

173.   Plaintiff is entitled to all damages.

## COUNT FOURTEEN:
## RESPONDEAT SUPERIOR

174.   Kittredge CO Partners, LLC and Defendant Cortland Management, LLC is responsible for the negligent actions of its employees or agents including but not limited to Ashley Bussard, Kayla Hedemark, and Co-Conspirators.

175.   RealPage is responsible for the negligent actions of its users, Kittredge CO Partners, LLC and Defendant Cortland Management, LLC and their employees or agents including but not limited to Ashley Bussard, Kayla Hedemark, and Co-Conspirators

176.    Defendants were negligent in their care and/or treatment of Plaintiff while acting within the course of their employment or authority.

177.    As direct and proximate result of the negligent conduct of Defendants, Plaintiff has suffered injuries and damages as fully described above.

# E. <u>PRAYERS FOR RELIEF</u>

178.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference. Plaintiff has suffered *inter alia*, severe emotional and mental distress as a result of the fraudulent behavior of the Defendants; all resulting in *inter alia* loss of life enjoyment, past and future pain and suffering, and an increased risk of harm. Past and future lost income, wages, and earnings.

**WHEREORE,** Plaintiff seeks a jury trial on all claims so triable and prays for judgement as follows:

I.    Declare that the policies and practices of Defendants constitute violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3619; the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f; the Fourth Amendment of the Constitution of the United States of America; the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States of America; in violation of 42 U.S.C. § 1985(3), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.

II.    Permanently enjoin Defendants from committing future violations of FHA, CFPA, FCRA, Regulation V, or any other provision of federal consumer financial law through the implementation of policies and procedures which do not disparately treat or impact minorities;

III.   Award actual damages to the Plaintiff in accordance with 15 U.S.C. § 1691e(a); 42

U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, 42 U.S.C. § 3631, 15 U.S.C. § 1681,

and 28 U.S.C. § 1367.

IV.   Award punitive damages to Plaintiff in accordance with 15 U.S.C. § 1691e(b), 42 U.S.C.

§ 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, 42 U.S.C. § 3631, and 28 U.S.C. § 1367;

V.   Award Plaintiff costs and fees in accordance with 15 U.S.C. § 1691e(d); 15 U.S.C. § 5-5-

206 and C.R.S. § 4-5-111(c)(d)(e)(f);

VI.   All statutory damages according to proof awarded to the Plaintiff;

VII.   Maximum pre and post judgement interest awarded on all allowable damages for the

Plaintiff;

VIII.   Special damages awarded to the Plaintiff;

IX.   Pursuant to C.R.S. 5-5-206. Civil Liability for Discrimination, provide damages of

$100,000;

X.   Award actual and punitive damages to Plaintiff, due to multiple breaches of contract;

XI.   Award actual and consequential damages liberally pursuant to C.R.S. §§ 6-1-101 et. seq.,

6-1-113, C.R.S. § 4-1-305 and C.R.S. § 4-2-715;

XII.   All statutory damages according to proof;

XIII.   All costs and attorney's fees related to this matter;

XIV.   Other relief the Court finds appropriate awarded to the Plaintiff.

**Jury Demand**

Plaintiffs seek a jury trial on claims so triable.