# UNITED STATES DISTRICT COURT
for the
## District of Colorado

Case No. **20-CV-00208-GPG**

Tiffany Grays, *pro se*
*Plaintiff(s)*

\- **V** -

Kittredge Co Partners, LLC;
Cortland Management, LLC; Unknown
Kittredge Co Partners, LLC Co-Conspirators;
Unknown Cortland Management, LLC Co-Conspirators; Ashley Bussard; Kayla
Hedemark; RealPage, Inc.
*Defendant(s)*

# AMENDED COMPLAINT

## D.  STATEMENT OF CLAIMS

## FACTS

1.      The Federal Fair Housing Act makes it unlawful to discriminate in the provision of housing because of race, color, and/or sex. See 42 U.S.C. Section 3604(a).

2.      Under the law, the aforementioned discrimination in housing need not be intentional. "Liability may be established under the Fair Housing Act based on a practice's discriminatory effect…even if the practice was not motivated by discriminatory intent." *C.F.R. Section 100.500*.

3.      A housing practice which "… actually or predictably results in disparate impact on a group of persons," *C.F.R. Section 100.500(a)*, is said to have a discriminatory effect.

4.      *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.,*
135 S.Ct. 2507 (2015).

5.      Empirical evidence shows "Criminal records-based barriers to housing are likely to have
a disproportionate impact on minority home seekers. While having a criminal record is not a
protected characteristic under the Fair Housing Act, criminal history-based restrictions on
housing opportunities violate the Act if, without justification, their burden falls more often on
renters or other housing market participants of one race or national origin over another (i.e.,
discriminatory effects liability)[1]." As many as 100 million U.S. adults – or nearly one-third of the
population – have a criminal record of some sort[2]. Across the United States, African Americans
and Hispanics are arrested, convicted and incarcerated at rates disproportionate to their share of
the general population[3].

6.      *Pro se* Plaintiff, Ms. Tiffany Grays, an individual consumer over the age of 18, a
Colorado Native who resides in Colorado and has rented from multiple multi-family complexes
in Colorado; never having been charged nor convicted of any crimes pertaining to her being a
direct threat to the health or safety of other individuals or whose tenancy has resulted in
substantial physical damage to the property of others. Plaintiff an African American woman who
was denied housing at Lakecrest, through Kayla Hedemark and Ashley Bussard for reasons
undisclosed to Plaintiff prior to her application, for having "more than one misdemeanor."

---

[1] https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF

[2] Id. citation 1 at Id. ¶ 2, citing Bureau of Justice Statistics, U.S. Dep't of Justice, Survey of State
Criminal History Information Systems, 2012, 3 (Jan. 2014), available at
https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf.

[3] Id. citation 1 at Id. ¶ 3.

7.      Plaintiff conducted all business transactions with the Defendants in Colorado. Plaintiff previously filed a charge of housing discrimination against Lakecrest, which resulted in a finding of no probable cause. Plaintiff appealed that finding and was provided a letter affirming no probable cause on July 29, 2019. Plaintiff brings her claims of housing discrimination along with additional claims in this instant case which stem from a separate transaction; the intrusion of Lakecrest into the Plaintiff's consumer credit report in 2019; months after the alleged discrimination occurrence.

8.      Defendant Kittredge CO Partners, LLC and Defendant Cortland Management, LLC, both foreign liability companies, jointly own and manage the property which facilitated and conducted the alleged violations against Plaintiff, Lakecrest at Gateway Park. Lakecrest at Gateway Park is located at 4699 Kittredge St, Denver, CO 80239, has 440 units, and is a multi-family community. Employees of Lakecrest at Gateway Park are considered employees of Kittredge CO Partners, LLC and Cortland Management, LLC. Kittredge CO Partners, LLC and Cortland Management, LLC. regularly access consumer reports for the determinization of creditworthiness and ability to become residents at Kittredge CO Partners, LLC and Cortland Management, LLC properties, including Lakecrest at Gateway Park. Kittredge CO Partners, LLC and Cortland Management, LLC are jointly and severally liable for the conduct of their employees.

9.      Defendants Unknown Kittredge CO Partners, LLC Co-Conspirators and Defendants Unknown Cortland Management, LLC Co-Conspirators (collectively "Co-conspirators") are being named in their individual and professional capacities, are likely located in various locations, were or are employees, contractors, sub-contractors, and/or third-party service

providers for Kittredge CO Partners, LLC and/or Cortland Management, LLC; and are in the agency of Kittredge CO Partners, LLC and/or Cortland Management, LLC. Unknown Kittredge CO Partners, LLC Co-Conspirators and Unknown Cortland Management, LLC Co-Conspirators' actions are arbitrary in that they failed the Plaintiff, by failing to adhere to terms stipulated by law and when confronted acted to further deprive Plaintiff of her privacy and her ability to receive justice so owed. Co-conspirators are being named in her individual and professional capacities and may or may not have participated in providing fraudulent documents in response to Colorado Civil Rights Division requests for information.

10.     Defendant Ashley Bussard, Caucasian, and at the time of Plaintiff's allegations was the Community Manager for Lakecrest at Gateway Park. Ms. Bussard was responsible for the denial of Plaintiff's application due to undisclosed criteria of having more than one misdemeanor. Ms. Bussard having aided the Plaintiff in her application, was aware of Plaintiff's color and race prior to making the adverse decision. Ms. Bussard is responsible for providing responses and documents in response to Plaintiff's charge of housing discrimination; including but limited to documents used to determine eligibility of applicants who failed to receive an initial approval or denial and documents which express community resident statistics. Ms. Bussard is believed to be a Co-Conspirator and is being named in her individual and professional capacity. Ms. Bussard was directly and extensively involved in setting the approval or denial of housing applications, including the Plaintiff's.

11.     Defendant Kayla Hedemark, Caucasian, and at the time of Plaintiff's allegations was a Leasing Consultant for Lakecrest at Gateway Park. Ms. Hedemark was the actual perpetrator of Ms. Bussard's' disparate treatment of the Plaintiff, through the disparate impact of Ms. Bussard's and Lakecrest's undisclosed policies and procedures. Ms. Hedemark made the phone call

informing the Plaintiff her application for housing had been denied because the Plaintiff had

"more than one misdemeanor." Ms. Hedemark is responsible for refunding the Plaintiff's

deposit, an action which is arbitrary to Lakecrest's application policies. Ms. Hedemark is

believed to be a Co-Conspirator and is being named in her individual and professional capacity.

12.    Defendant RealPage, Inc., a reseller and user of consumer credit reports, in addition to

being a Consumer Reporting Agency, was founded in 1998, and is based in Texas. The company

offers tenant background screening services to property owners and managers through its wholly

owned subsidiary LeasingDesk. According to its website, RealPage is "a leading global provider

of software and data analytics to the real estate industry" and its "advanced resident screening

software solution puts the knowledge and pricing power into" the hands of the property owner.

The company boasts that it "currently serves nearly 12,500 clients worldwide from offices in

North America, Europe and Asia." RealPage failed the Plaintiff in by failing to shield the

Plaintiff's consumer credit report from unauthorized inquiries, failed to act once notified,

therefore causing and/or significantly contributing to Plaintiff's injuries alleged herein.

13.    Restrictions on permissible access and use of consumer reports are well established in the

plain language of the Fair Credit Reporting Act ("FCRA"), as well as in the promulgations of the

Federal Trade Commission and the Consumer Financial Protection Bureau.

14.    Defendants held knowledge or should have known its duties under the FCRA. Any

reasonable user, and/or reseller and/or Consumer Reporting Agency, that utilizes or accesses

consumer reports, knows about or should know about, and if not known, can easily discover the

federal mandates arising under the FCRA.

15.    Lakecrest's business practice was to have potential residents come in and tour the property with an agent or representative of Defendants. Potential residents are advised they can apply online in the office or via personal device.

16.    Once an application is received and paid for, Lakecrest's business practice is to run criminal and credit inquiries against the information contained within the application. Upon receiving reports from the inquiries, Lakecrest would: 1) Automatically approve or deny the application; or 2) conditionally approve criminal histories for further consideration by Community Manager's if the applicants' criminal history presented with more than one misdemeanor.

17.    Upon receiving notification of the requirement for further consideration, the Community Manager who has historically been Caucasian, would then assess the applicants' crimes and determine eligibility against non-objective data including but not limited to race, color, income, and the Community Manager's personal desires and/or thoughts of the applicant's crimes.

18.    After completing an onsite tour days before and with the assistance of Ashley Bussard, Plaintiff applied for housing onsite at Lakecrest, on or about July 24, 2018, through an electronic application administered by RealPage's screening solutions, on a Lakecrest computer.

19.    RealPage's screening solutions furnishes assembled background reports including consumers' rental, criminal, and eviction histories, from multiple sources to thousands of client rental property owners and property management companies throughout the United States to, amongst other things, assist the RealPage clients in selecting tenants; the same report assembled for the Plaintiff.

20.     The aforementioned reports assembled and furnished by RealPage to Lakecrest are considered "consumer reports" as defined in 15 U.S.C. § 1681a(d).

21.     RealPage uses the assembled information to determine an applicants' creditworthiness in the form of approved, denied, or requires consideration; a decision which is communicated to Lakecrest.

22.     On or about July 24, 2018, RealPage assembled and used Plaintiff's consumer credit report to communicate a decision to Lakecrest that Plaintiff's application was not approved, nor denied, but required further consideration.

23.     Had Plaintiff been aware that "more than one misdemeanor" would likely result in denial, Plaintiff would never have applied for housing at Lakecrest.

24.     During the relevant time period, RealPage had minimally deficient procedures, to ensure RealPage did not maintain a consumer credit report after its intended use was exercised, ensuring the report was no longer accessible by RealPage clients including Lakecrest; a scoring override sheet.

25.     The consideration given to Plaintiff's application through a scoring override sheet, was performed by Ashley Bussard, and was based on information obtained at the time, which included convictions inside and outside the past 7 years; in violation of HUD and FCRA mandates.

26.     RealPage affords and encourages Lakecrest to view pictures of the applicants when making creditworthiness decisions which have led to the disparate treatment and impact to African Americans and minorities as Lakecrest not only sees the race and ethnicity of applicants

during tours of the complex, but within the application as well; a picture available to Ms.

Bussard at the time of her decision on Plaintiff's application for housing.

27.    The housing application failed to state "more than one misdemeanor" would disqualify

applicants nor the ability for additional future inquiries.

28.    The housing application has the following consent form, to which the Plaintiff agreed:

**Consent Form**

I authorize LAKECREST AT GATEWAY PARK by Cortland to obtain reports from any consumer or criminal record reporting agencies before, during, and after tenancy on matters relating to a lease by the above owner. And to verify, by all available means, the information in this application, including criminal background information, income history and other information reported by employer(s) to any state employment security agency. Work history information may be used only for this Rental Application.

29.    Based on the language in the consent form, the following must be true:

a.  The Rental Application is not the same document as the lease.

b.  The limitation on which reports may be obtained are constrained to:

   a.  Matters relating to a lease by the above owner; and/or

   b.  To verify, by all available means, the information in this application.

30.    Plaintiff therefore consented to Defendants use and procurement of Plaintiff's consumer

or criminal report(s) in the following two conditions only:

a.  Matters relating to a lease by the above owner; and/or

b.  To verify, by all available means, the information in this application.

31.    Plaintiff's housing application did not ask or contain any statement regarding the

Plaintiff's criminal history.

32.     Plaintiff made no representation as to her criminal history.

33.     Plaintiff's housing application was unlawfully denied by Lakecrest on or about July 25,

2018, by Kayla Hedemark, though Ashley Bussard's decision, which was arbitrarily based on

"more than one misdemeanor."

34.     Prior to Plaintiff's application, Plaintiff was not informed that "more than one

misdemeanor," would disqualify her from residency.

35.     The criminal background disclosers in the Rental Application states,

**Criminal History:** Cortland Management conducts background screening on all applicants,
occupants, guarantors, and co-signers. Our investigation includes criminal background
screening. It is possible an application may be denied due to criminal history. Cortland
Management maintains a strict policy prohibiting registered sex offenders from residing within
our communities. This community reserves the right to investigate lists of registered sex
offenders in any manner including online, in newspapers, or by contacting state agencies.

36.     The Criminal History on the Rental Application fails to state one nevertheless three or

more misdemeanors would disqualify an applicant or cause an applicant's application to come

under additional scrutiny.

37.     For an unknown amount of time, Defendants' failure to disclose one or more

misdemeanors would disqualify an applicant has resulted in minorities and African Americans

being disproportionately denied housing for reasons not based on creditworthiness or other

objective data when compared to non-minorities and whites.

38.     There is consequently a casual connection between Defendants' business practices and

the disparities in the impact and treatment of applicants who are minorities, as was Plaintiff.

39.     Lakecrest's conditional approvals and an insufficient and/or irrelevant worksheet to determine final approval through the Community Manager, resulted in discriminatory policies and practices that: (a) allowed Community Manager's discretion in determining an applicant's residential risk; (b) allowed approvals which were not based upon objective data, (c) did not require Community Managers to justify or document the reason(s) for denial; and (d) failed to adequately monitor for and fully mitigate effects of race and color disparities conditional approvals receiving final approvals.

40.     Lakecrest's policies and practices identified in the previous Paragraph were not justified by business necessity or legitimate business interests. Multiple less discriminatory alternatives or methods to ensure propriety available to Lakecrest and intently unused. For example, Lakecrest could have, but failed to, modify the discretion it allowed to Community Managers and how crimes were assessed in the conditional approval worksheet. Similarly, Lakecrest could have, but failed to, better monitor Community Managers use of and decisions based upon conditional approvals to discourage discrimination against based on applicant's race or color. There was no business necessity or legitimate business interest behind Lakecrest's decision to allow its Community Managers to engage in discrimination against rental applicants based on race and color. Moreover, Lakecrest's failure to adequately address discrimination in its rental practices encouraged discrimination to continue.

41.     Lakecrest had knowledge that the discretion it granted to Community Managers in its Rental Application policies and practices was being exercised in a manner that discriminated against African-Americans and minorities, but continued to exercise and implement its policies and practices with that knowledge; failing to fully eliminate their discriminatory impact.

42. Lakecrest did not act to identify or compensate applicants who were victims of its discriminatory rental housing policies or practices.

43.     Lakecrest admits the denial of Plaintiff's Rental Application was arbitrary in that Lakecrest refunded the Plaintiff's deposit, while Lakecrest has a policy in which deposits and application fees are not refunded for applications which are denied.

44.     Minorities are disproportionately charged and convicted of crimes in the United States[3]. Therefore, disqualification of housing based on criminal convictions disproportionately affects minority communities; as was the Plaintiff[1].

# CAUSES OF ACTION

45.     Unless otherwise noted, each Claim is against all Defendants. Plaintiffs re-alleges the preceding paragraphs set forth above and herein and incorporate them herein all Claims by reference *inter alia*:

## CLAIM ONE: LAKECREST – Cont.
## DISCRIMINATION AND RETALIATION IN RENTAL HOUSING
## 42 U.S.C. § 3601 *et seq*

52.     Plaintiff challenges Lakecrest's facially discriminatory actions and the effects of the facially neutral actions of Lakecrest, which were not enough to persuade Defendants' into renting to Plaintiff.

53.     Lakecrest's rental practices allowed Lakecrest to have information about the Plaintiff's and other applicants' race and color prior to making housing decisions.

54.    Lakecrest's alleged restrictions were blanket stereotypes against protected classes under Title VII; dark-skinned, African-Americans with more than one misdemeanor, as was Plaintiff.

55.    Defendants' proffered reasons for the causation of the denial of housing is weak, incoherent, implausible, and/or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence.

56.    For reasons which can only be construed as to due to race and color, Lakecrest refused to rent to the Plaintiff after making a bona fide offer, for reasons unsupported by legal justification, in violation of 42 U.S.C. 3604(a);

57.    In violation of 42 U.S.C. 3604(b), Lakecrest's rental practices and procedures discriminate against persons in the terms, conditions, or privileges of renting a dwelling with Lakecrest, because of race and color, by:

a.    disproportionately affecting minorities through a scoring system which is not bona fide and allows disparate impact through the discretion of its primarily Caucasian users, as was Plaintiff;

b.    disproportionately affecting minorities through undisclosed approval requirements which are based solely upon criminal convictions, as was Plaintiff;

c.    disproportionately affecting minorities by failing to consider mitigating factors regarding said criminal convictions, as was Plaintiff.

d.    disproportionately affecting minorities through a scoring system which fails to be tailored to particularized concerns about individual residents.

58.    Lakecrest's denial of Plaintiff's application was not a reasonable restriction.

59.     After Plaintiff's appeal, Defendant Kayla Hedemark admitted on recorded phone call the reason and only reason for the express denial of Plaintiff's application for rental housing was only "more than one misdemeanor."

60.     Combined with the statistics provided by HUD[1-3], minorities with "more than one misdemeanor' are disparately impacted though the denial of rental housing applications at Lakecrest; a policy undisclosed to applicants, as was Plaintiff.

61.     Lakecrest's actions, policies and practices, as alleged herein, constitute Discrimination on the basis of race or ethnicity in making available, or in the terms or conditions of, residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a);

62.     Lakecrest could have or should have deployed less restrictive and less discriminatory practices.

63.     Lakecrest's proffered less restrictive and less discriminatory practices in reality discriminately impact and treat African Americans', as was Plaintiff.

64.     Lakecrest's proffered less restrictive and less discriminatory practice deployed upon the Plaintiff did not assess her application pursuant to the guidance issued by HUD nor the Division of Housing and Community Renewal; and if they had been properly used, Plaintiff would have been approved for residency at Lakecrest.

65.     The unlawful search and release of information contained within the Plaintiff's consumer credit report after the application for housing was denied, was done in retaliation, to coerce, intimidate and interfere with the Plaintiff's pursuit of justice and equality in violation of 42 U.S.C. § 3617.

66.     Lakecrest's discriminatory actions were meant to discriminate against the Plaintiff and minorities in general, as Defendants' monitoring and/or compliance checks to remedy discriminatory practices against minorities, alongside Plaintiff's charge of discrimination were sufficient to put Lakecrest on notice of widespread discriminatory housing practices. Even when noticed of the disparities, Defendants failed to act in determining the full scope of and eliminating the disparities in rental practices and disclosures; including failing to engage in adequate efforts to remedy the impact of those disparities upon applicants.

67.     Lakecrest's actions causing Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences.

68.     Lakecrest's pattern or practice of discrimination has been intentional, willful, and has been implemented with reckless disregard for the rights of African-American and minority rental applicants.

69.     Plaintiff is entitled to all damages in accordance with 42 U.S.C. § 3631.

## CLAIM TWO: LAKECREST- Cont
## VIOLATIONS OF 42 U.S.C. § 1981 et seq

77.     In its discriminatory actions as alleged above, Lakecrest has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

78.     To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests that the Court award relief prayed for below.

## CLAIM THREE: LAKECREST

## VIOLATIONS OF 42 U.S.C. § 1982 et seq

79.     Housing discrimination that would be covered by Section 1981 is almost without

exception also prohibited by Section 1982. Section 1981 differs from Section 1982 in two

important respects. First, 1981's protection against discrimination extends to all persons while

section 1982 covers only citizens.

80.     Plaintiff is a member of racial minority groups dark-skinned black, African American.

81.     By and through the preceding, Plaintiff was denied opportunity to lease or hold the real

and personal property of an apartment at Lakecrest, due to Plaintiff's race and/or color.

82.     By and through the preceding paragraphs, Lakecrest intentionally deprived Plaintiff of

the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all

benefits and privileges, of their contractual relationship with Lakecrest, in violation of 42 U.S.C.

§1981.

83.     As a result of Lakecrest's discrimination in violation of Section 1981, Plaintiff has been

denied housing opportunity; thereby entitling her to injunctive and equitable monetary relief, as

she has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life

because of Lakecrest's actions, thereby entitling them to compensatory damages.

84. In its discriminatory actions as alleged above, Lakecrest has acted with malice or reckless

indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

85. To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests

that the Court award relief prayed for below.

## CLAIM FOUR:

## FCRA 15 U.S.C. § 1681 et seq

86.    By and through the preceding, Plaintiff is a consumer with a consumer credit report as

defined in the FCRA.

87.    By obtaining consumer credit reports for the purposes of making creditworthiness

decision for housing, Lakecrest and Co-conspirators are "users of consumer reports" as

contemplated by the FCRA, in 15 U.S.C. § 1681a(d)(1).

88.    Through interstate commerce, for the purposes of preparing and/or furnishing consumer

reports for monetary fees, RealPage regularly engages in whole or in part in the practice of

assembling and/or evaluating consumer credit information on consumers for the purpose of

furnishing consumer reports to Lakecrest, makes RealPage a "Consumer Reporting Agency" as

defined in 15 U.S.C. § 1681a(f).

89.    In providing consumer reports to Lakecrest and maintaining a national database,
RealPage is a "consumer reporting agency that compiles and maintains files on consumers on a
nationwide basis" *15 U.S.C. § 1681a(p),* as RealPage is "consumer reporting agency that
regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of
furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit
standing, or credit capacity, each of the following regarding consumers residing nationwide: (1)
Public record information; and (2) Credit account information from persons who furnish that
information regularly and in the ordinary course of business." *Id.* § 1681a(p).

90.    RealPage resells consumer credit reports to Lakecrest and Kittredge as defined in §

1681e, therefore is a reseller of consumer credit reports.

91.    Prior to the Plaintiff's application for housing, Lakecrest had exchanged monetary fees for RealPage's assembling and/or evaluating and maintain[ing] of housing applicant's consumer credit reports, actions performed against Plaintiff's consumer credit report.

92.    On or about July 24, 2018, Lakecrest as a regular practice, requested RealPage to assemble and/or evaluate and maintain the Plaintiff's consumer credit report with the purpose of furnishing the Plaintiff's consumer credit report to third parties, Lakecrest, Ashley Bussard, and Kayla Hedemark; the information obtained having bearing on Plaintiff's credit worthiness, credit standing, and/or credit capacity.

93.    The aforementioned, July 24, 2018 application, resulted in a hard inquiry showing on Plaintiff's consumer credit report.

94.    The aforementioned hard inquiry has reduced Plaintiff's credit score, thereby her creditworthiness; injuries she would not have obtained had she known more than one misdemeanor would likely disqualify her for housing at Lakecrest

95.    RealPage assembles and/or evaluates and maintains each of the following regarding consumers residing nationwide: (1) Public record information; and (2) Credit account information from persons who furnish that information regularly and in the ordinary course of business.

96.    It was through RealPage's maintenance of this information that was then used in 2019 for reasons not authorized by the Plaintiff. Plaintiff's report obtained by Lakecrest and Co-Conspirators for use in determining residential approval or denial was pulled, used, and/or manipulated in response to the Colorado Civil Rights Division investigation; therefore this report

was furnished in connection with a "… credit transaction not initiated by the consumer." 15 U.S.C. § 1681b(c)(1).

97.    This aforementioned 2019 report contained all information originally received in 2018, plus additional criminal history spanning Plaintiff's life, in violation of 15 U.S.C. § 1681b(c)(2)-(3).

98.    Both the initial and subsequent reports violate the FCRA in by using criminal record information beyond the 7-year period; Defendants were to use the date of charging yet egregiously elect to use date of conviction, all in violation of § 1681c(c)(1).

99.    Despite knowing of its legal obligations, Defendants acted recklessly and consciously in breaching its known duties; resulting in depriving Plaintiff of her rights under the FCRA, causing Plaintiff to be denied extensions of credit, by furnishing information to third parties without authorization from the consumer Plaintiff.

100.   Defendants violated 15 U.S.C. § 1681b(f) by willfully and/or recklessly obtaining or using Plaintiff's consumer credit report without a permissible purpose or authorization under the FCRA, as had Plaintiff been aware more than one misdemeanor would disqualify her from renting, she would never have applied for housing.

101.   RealPage and Lakecrest violate §§ 1681 through the unauthorized second inquiry in 2019 by and through:

a.   Failing to provide the Plaintiff a statement informing her of rights to request additional disclosures, in violation of § 1681d(a)(1);

b.   Using the report for reasons other than establishing the Plaintiff's eligibility for credit, employment, insurance, or other permissible purposes allowed by the FCRA.

c.   Furnishing a consumer credit report for impermissible reasons in violation of §§ 1681b(a),(c),(f).

d.   Failing to provide a written summary of the rights of the consumer prepared pursuant to section 1681g(c); in violation of §§ 1681d(a)(1) and 1681g(c);

e.   Failing to establish and follow reasonable procedures to ensure that Lakecrest, RealPage's customers' access to Plaintiff's consumer report, was resold only for permissible purposes, including failure to obtain from Lakecrest, in violation of § 1681e(e):

> (1) the identity of all end-users;
>
> (2) certifications from all users of each purpose for which reports will be used; and
>
> (3) certification that reports will not be used for any purpose other than the purpose(s) specified to the reseller; and/or

f.   Including information that related to an arrest without verifying the accuracy in violation of § 1681d(d)(3).

g.   Employees and or Officers of RealPage knowingly and willfully provided information concerning the Plaintiff from RealPage's files to Lakecrest, persons not authorized, in violation of § 1681r.

h.   Obtaining, using, and furnishing Plaintiff's criminal history which was well beyond the seven year limit, without required exemption; in violation of § 1681c(a)(2).

102.   By and through the preceding paragraphs, both the July 24, 2018 and the subsequent report obtained in 2019, were obtained under false pretenses in violation of § 1681q.

103.    RealPage does not have reasonable procedures in place to ensure reports are obtained under permissible purposes, which does not include months after a rental decision was made in violation of the FCRA.

104.    Lakecrest and RealPage violated 15 U.S.C. § 1681o by negligently obtaining or using the consumer files without a permissible purpose or authorization under the FCRA; after being made aware of Plaintiff's claims, failing to correct.

105.    The adverse action letter received failed to properly state the reason(s) for denial, nor the third party for whom the report was prepared, in further violation of the FCRA.

106.    As a result of the above violations of the FCRA, Defendants invaded Plaintiff's privacy.

107.    Upon receiving the denial of housing, Plaintiff requested a copy of her consumer and criminal report which was used to make the denial decision and filed a charge of housing discrimination against Lakecrest with the Colorado Civil Rights Division, ("CCRD"), FH2019016495.

108.    Plaintiff requested and received a copy of the report which was used to make the decisions from RealPage.

109.    During the investigation by the CCRD, Plaintiff learned Defendants' criminal reports to qualify applicants seeks only crimes which were committed within the seven years previous to the application date.

110.    During the investigation by the CCRD, Plaintiff learned Defendants' conducted another inquiry and/or obtained or accessed the Plaintiff's consumer report, through RealPage, to formulate a secondary response to the CCRD.

111.    In fact, according to documents provided to the CCRD by Defendants, Defendants reused/re-obtained the Plaintiff's consumer reports on or about January 17, 2019.

112.    Plaintiff did not authorize Defendants' use of her consumer reports on or about January 17, 2019.

113.    The Plaintiff's consumer report which was reused/re-obtained by Defendants on or about January 17, 2019, was additional criminal history not previously reported in the original consumer report.

114.    The Plaintiff's consumer report which was reused/re-obtained by Defendants on or about January 17, 2019, was used by Defendants to justify the alleged disparate treatment of the Plaintiff, reasons not permitted by the Plaintiff.

115.    The information which was reused/re-obtained by Defendants on or about January 17, 2019, was therefore not caused by or related to:

    a.  A lease by the above owner; and/or
    b.  Verify, by all available means, the information in this application.

116.    Therefore, Defendants' use, procurement, and allowance of Plaintiff's consumer report, by Defendants on or about January 17, 2019, was in violation of the FCRA.

117.    Lakecrest is void of permissible purpose to access Plaintiff's consumer report outside of determination of Plaintiff's residential capabilities on or about July 24, 2018; as set forth under the FCRA, 15 U.S.C. § 1681b(a)(3).

118.    RealPage is void permissible purpose to permit Lakecrest to access Plaintiff's consumer report outside of determination of Plaintiff's residential capabilities, as set forth under the FCRA, 15 U.S.C. § 1681b(a)(3).

119.    Plaintiff became aware of the illegitimate inquiry in mid-2019.

120.    While Lakecrest's illicit inquiry substantiates the discriminatory conduct alleged in Plaintiff's charge of discrimination, in by unlawfully treating the Plaintiff though intentional indifference to Plaintiff's rights; the CCRD found no probable cause after appeal on July 29, 2019, giving the Plaintiff two years to file her civil suit.

121.    Defendants knew or should have known that its actions violated the FCRA, as the permissible use of the Plaintiff's consumer report had expired the previous year.

122.    Plaintiff's damages caused as direct and foreseeable consequences of these breaches, include but are not limited to Plaintiff's: physical injuries of Fibromyalgia; severe emotional distress, mental injuries and anguish, past and future economic and non-economic losses; pain and suffering, and other similar injuries. These injuries are permanent and at times are disabling, incapacitating, crippling and humiliating. Plaintiff has incurred expenses for therapy, medicine, medical treatments, and other similar expenses; and will continue to incur these expenses into the future; in an amount to be proven at trial.

123.    As a result of these FCRA violations, Defendants are each liable to Plaintiff for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of the violations alleged herein, and for fees and costs pursuant to §1681n and §1681o.

124.    Plaintiff believes violation calculations are as follows:

    a.  Each Co-Conspirator: 2

    b.  Each violation line published: 30

    c.  Days since housing denial through date of filing, up to and including maximum statutory damages: +/$528-$1,000

                Total = 2x60x528 = $31,680

125.    Additionally, Lakecrest's and RealPage's obtaining the consumer report under false pretenses and/or failing to disclose all purposes, has resulted in Plaintiff believing each violation calculations are as follows:

    a.  Each Violator: 2

    b.  Each inquiry: 1

    c.  Each violation day: 620

    d.  Maximum statutory damages: $1,000

                Total = 2x1x620x1000 = $1,240,000

## CLAIM FIVE: LAKECREST

## FRAUDULENT CONCEALMENT OF MATERIAL RENTAL HOUSING APPLICATION FACTS

126.    By and through the preceding paragraphs, Defendants' representations to the Plaintiff that only sexual crimes would result in housing application being denied were false and material.

127.    By and through the preceding paragraphs, Defendants' concealment of the material fact that having more than one misdemeanor would likely lead to housing being denied, was undisclosed at the time Plaintiff applied for housing.

128.    By and through the preceding paragraphs, Defendants knew and/or reasonably expected the Plaintiff being a dark-skinned African American, while being under the thought only sexual crimes would exclude housing representation to the Plaintiff, would apply for housing and likely be denied.

129.    By and through the preceding paragraphs, Defendants gave the sexual crimes misrepresentations to the Plaintiff during and after the consumer credit transaction, the application, and in the normal course of Defendants business with the Plaintiff.

130.    By and through the preceding paragraphs, Defendants fail to disclose unfettered access to Plaintiff's consumer credit report after originally authorized and retrieved.

131.    By and through the preceding paragraphs, these misrepresentations were given to the Plaintiff for the guidance of the Plaintiff during the consumer credit transaction.

132.    Defendants abused trust and authority by using Plaintiff's private information provided only for approval of her housing application, to search her consumer credit report at a later time; to formulate a response to the Colorado Civil Rights Division.

133.    Plaintiff permitted Defendants' use her private information for the purposes of approving or denying Plaintiff's application for housing in July 2018, only; which LakeCrest denied in July 2018.

134.    Defendants knew or should have known that state law, the FCRA, and the United States Constitution forbade the use and search of a consumers' private information and consumer credit report without the expressed consent of that consumer. Defendants nonetheless continued their plight to harm the Plaintiff.

135.    Lakecrest's actions were motivated by mendacity and intent to harm, as Lakecrest knew Plaintiff would rely and perform based upon said representations.

136.    Through facts and circumstances confronting Defendants, Defendants' actions, as described herein, were overtly unreasonable, willful and wanton.

137.    Defendants' conduct, as described herein, violated Plaintiff's clearly established rights, of which reasonable people in Defendants' position knew.

138.    By and through the preceding paragraphs, Defendant's concealed material information at the time of the making of the contract; as had Plaintiff known more than one misdemeanor would likely result in being denied housing, Plaintiff would not have authorized Defendants' access of Plaintiff's consumer credit report, nor would Plaintiff have applied.

139.    Plaintiff's justified reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

140.    Plaintiff is entitled to damages proven through trial.

141.    Plaintiff is entitled to her reasonable fees and costs.


# CLAIM SIX: LAKECREST
# FRAUDULENT INDUCEMENT -  RENTAL HOUSING APPLICATION

142.    By and through preceding paragraphs, by specifying only sexual crimes as those which would cause an application to be denied, Lakecrest lured Plaintiff and all other applicants without sexual crimes into the application for housing.

143.    By and through preceding paragraphs, Lakecrest's conduct, as described herein, violated
Plaintiff's clearly established rights, of which reasonable people in Defendants' position should
have known.

144.    Restatement of Claim Three.

## CLAIM SEVEN: LAKECREST
## COLORADO ANTI-DISCRIMINATION ACT C.R.S. § 24-34-501

145.    By any through the preceding paragraphs, Plaintiff is an "aggrieved person" as defined in
§ 24-34-501(1).

146.    By any through the preceding paragraphs, Plaintiff is applied for "housing" with
Lakecrest, as defined in § 24-34-501(2).

147.    By any through the preceding paragraphs, Plaintiff is an "person" as defined in § 24-34-
501(3).

148.    By any through the preceding paragraphs, Lakecrest has performed "unfair housing
practices" as defined in § 24-34-501(6).

149.    By any through the preceding paragraphs, Plaintiff is a member of multiple protected
classes; female, African-American and Black.

150.    By any through the preceding paragraphs, Defendants engaged in unlawful housing
practices by discriminating against Plaintiff through facially neutral policies and procedures.

151.    By any through the preceding paragraphs, Defendants discrimination and adverse
treatment of Plaintiff, was wrongful.

152.    By any through the preceding paragraphs, Defendants treated Plaintiff and other minorities with "more than one misdemeanor" more adversely than similarly situated counterparts who were Caucasian.

153.    The effect of the practices complained of above has been to deprive Plaintiff and other minorities with "more than one misdemeanor," equal housing opportunities; adversely affecting Plaintiff's status as a housed person, her creditworthiness, and depriving her of the full and equal benefit of laws; all due to race and/or color.

154.    Said actions are discriminatory in violation of C.R.S. § 24-34-502 and have adversely affected the Plaintiff.

155.    The unlawful housing practices of Lakecrest complained of above were intentional.

156.    The unlawful housing practices of Defendants complained of above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

157.    The discriminatory housing practices of Defendants, their agents, supervisors, and employees directly and proximately resulted in Plaintiff's damages as may be proven at trial, including but not limited to damages described in all Claims.

## CLAIM EIGHT: LAKECREST
## INTRUSION UPON SECLUSION

158.    Lakecrest's intentional electronic invasion into the private affairs of the Plaintiff's consumer credit report in 2019, was unauthorized by the Plaintiff.

159.    Defendants in accessing Plaintiff's consumer report though impermissible reasons,
unlawfully subjected Plaintiff to an unreasonable search of her consumer report.

160.    Reasonable persons would defer unauthorized access and use of their consumer credit
report as offensive.

161.    Reasonable persons would defer unauthorized access and use of their consumer credit
report to respond to claims of housing discrimination as offensive.

162.    The Plaintiff's consumer credit report is a private matter; only available through the
Plaintiff's explicit consent and its use only for purposes under which consent was given.

163.    The manner in which Lakecrest accessed the Plaintiff's consumer credit report outside of
purpose granted and previously fulfilled was unreasonable as it was unlawful and unauthorized
by Plaintiff.

164.    The manner in which Lakecrest accessed the Plaintiff's consumer credit report outside of
purpose granted and previously fulfilled; for an illicit- ill-purpose of depriving the Plaintiff and
all other minorities access to equal housing; depriving the Plaintiff of the benefit of due process.

165.    While Plaintiff's court records are considered public record, accessing court records
through private consumer credit reports is an unauthorized use of the consumer credit report.

166.    Lakecrest transmitted the Plaintiff's private information contained in her consumer credit
report to third parties at the Colorado Civil Rights Division, for impermissible purposes and
without Plaintiff's consent.

167.    The information provided to the Colorado Civil Rights Division put the Plaintiff in a false
light of being unable to qualify for housing; that Plaintiff having more than one misdemeanor

conviction, over the course of her life, substantiated disqualification of her application for rental

housing.

168.     The information from the consumer credit report was intended for commercial use by

Defendants.

169.     The search commenced by Lakecrest and completed by and through RealPage violated

Plaintiff's constitutional rights.

170.     The unlawful use and search were the legal and proximate cause of Plaintiff's injuries.

171.     Plaintiff finding out, after the fact, her privacy has been invaded by Lakecrest, came as a

surprise; frightened the Plaintiff; disturbed and angered the Plaintiff; triggering and significantly

contributing to the Plaintiff's Post-Traumatic Stress Disorder.

172.     As a direct result of Lakecrest's intrusion, Plaintiff has suffered *inter alia* mental anguish,

pain and suffering, and multiple losses.

173.     Plaintiff's damages to be proven at trial.

## CLAIM NINE: LAKECREST
## BREACH OF CONTRACT

174.     The housing application submitted by Plaintiff to Lakecrest, through RealPage,

constitutes a contract.

175.     Defendants in accessing Plaintiff's consumer report though impermissible reasons,

unlawfully subjected Plaintiff to an unreasonable search of her consumer report, a violation of

the contract.

176.    Plaintiff performed in accordance with terms stated or was excused from nonperformance by Defendants' misconduct alleged herein.

177.    RealPage breached their contract with the Plaintiff in by arbitrarily and unnecessarily, permitting Lakecrest to access the Plaintiff's consumer credit report multiple times, after the application period had expired and the consumer credit report had already been accessed once.

178.    Lakecrest breached their contract with the Plaintiff in by arbitrarily and unnecessarily, accessing the Plaintiff's consumer credit report multiple times, after the application period had expired, the permissible use had been previously conducted, and the use was not related to or for the original authorized purpose, to approve the Plaintiff for housing.

179.    Plaintiff's reliance upon Defendants' representations in the contract and Defendants' direct, reasonable and foreseeable consequences has resulted in Defendants' breaches; causing Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences of Defendants' breaches.

180.    Plaintiff is entitled to damages proven through trial.

181.    Plaintiff is entitled to her reasonable fees and costs.


# CLAIM TEN:

# BREACH OF CONFIDENTIALITY

182.     Lakecrest's intrusion into Plaintiff's consumer credit report was not the only privacy

violation. Lakecrest broadcasted the private information obtained through the intrusion to the

Colorado Civil Rights Division.

183.     Lakecrest held multiple duties to keep the Plaintiff's information private and to use the

private information for authorized purposes only.

184.     Defendants in accessing Plaintiff's consumer report though impermissible reasons,

unlawfully subjected Plaintiff to an unreasonable search of her consumer report and seizure of

the information contained within it; forever on record with the CCRD.

185.     RealPage held a duty to ensure that Plaintiff's consumer report was accessed for

permissible purposes.

186.     Lakecrest and RealPage breached the confidentiality owed through the application and

laws.

187.     Plaintiff's reliance upon Defendants' representations in the contract, or lack thereof, and

Defendants' direct, reasonable and foreseeable consequences has resulted in Defendants'

breaches; causing Plaintiff's actual damages including but not limited to, loss of employment,

housing, creditworthiness, in addition to inter alia emotional distress, physical injuries, mental

anguish including humiliation and fear; all direct and foreseeable consequences of Defendants'

breaches.

188.     Plaintiff is entitled to damages proven through trial.

189.     Plaintiff is entitled to her reasonable fees and costs.

## CLAIM ELEVEN:

## BREACH OF FIDUCIARY DUTY

190.    As Users of Consumer Credit reports, Defendants held duties outlined by law.

191.    As Resellers of consumer credit reports, RealPage held duties outlined by law.

192.    As Consumer Reporting Agency, RealPage held duties outlined by law.

193.    As this issue concerns a consumer credit transaction, Defendants held duties outlined by law.

194.    As Defendants regularly engaged in trade, both nationally and by interstate, Defendants held duties outlined by law.

195.    Defendants were acting as a fiduciary to the Plaintiff with respect her housing application and consumer credit report.

196.    Based on the foregoing, Defendants breached duties owed to Plaintiff, including but limited to keeping information contained on the Plaintiff's consumer credit report confidential.

197.    As a result of Defendants' breach of fiduciary duties, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

198.    The aforementioned injuries, losses and damages of the Plaintiff were caused by Defendants breach of fiduciary duties, in an amount to be proven at trial.

## CLAIM TWELVE:

## **NEGLIGENCE**

199.    As Users of Consumer Credit reports, Defendants held duties outlined by law.

200.    As Resellers of consumer credit reports, RealPage held duties outlined by law.

201.    As Consumer Reporting Agency, RealPage held duties outlined by law.

202.    As this issue concerns a consumer credit transaction, Defendants held duties outlined by law.

203.    As Defendants regularly engaged in trade, both nationally and by interstate, Defendants held duties outlined by law.

204.    Defendants were acting as a fiduciary to the Plaintiff with respect her housing application and consumer credit report.

205.    Based on the foregoing, Defendants breached duties owed to Plaintiff.

206.    Defendants failure to keep Plaintiff's consumer report confidential, free from impermissible scrutiny, was willful and wanton, meant to cause the Plaintiff further distress and deprive her of justice so owed.

207.    Other Caucasian applicants had reasonable care exercised in the handling of their consumer credit reports and criminal histories.

208.    At the time of Defendants' failure to honor Plaintiff's contract, the following statues in the State of Colorado were in effect: (1) Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-301, et seq. ("UCC"); (2) Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, et seq. ("UCCC"); and (3) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ("CCPA").

209.    A violation of these Colorado Statutes constitutes negligence.

210.    Defendants' actions and Plaintiff's reliance upon said representations has caused
Plaintiff's actual damages including but not limited to, loss of employment, housing,
creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish
including humiliation and fear.

211.    Plaintiff is entitled to damages proven through trial.

212.    Plaintiff is entitled to her reasonable fees and costs.


## CLAIM THIRTEEN:

## OUTRAGEOUS CONDUCT

213.    By and through the preceding paragraphs, Defendants engaged in extreme and outrageous
conduct of violating various Colorado and Federal laws, recklessly or with the intent of causing
the Plaintiff severe emotional distress, as evidenced by Defendants' engorgement from overdraft
fees, other fees, and willful and wanton breach of contract.

214.    By and through actions described in preceding paragraphs, Defendants were negligent.

215.    Defendants' negligence in failing to abide by the terms and conditions of Plaintiff's
housing application, the services and benefits of Defendants, thereby created an unreasonable
risk of physical harm to the Plaintiff causing and/or significantly contributing to Plaintiff's fear,
injuries, and losses including homelessness, to be proved at trial.

216.    Plaintiff has suffered emotional distress, being forced into litigation to be made whole and prevent injuries to other minorities; resulting in trauma, stress, distress; resulting in mental and physical injuries.

217.    Reasonable persons could defer Defendants' conduct as outrageous.

## CLAIM FOURTEEN:

## Violations of the Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-301, et seq. ("UCC")

218.    C.R.S. § 4-1-304, Obligation of Good Faith, Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement.

219.    Colorado recognizes an obligation to conducting all commerce in good-faith.

220.    Lakecrest's use of Plaintiff's private information for impermissible access to the Plaintiff's consumer credit report; arbitrarily authorized by RealPage are violations of the covenant of good faith and fair dealing.

221.    As direct, reasonable and foreseeable consequence of these breaches, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

## CLAIM FIFTEEN:

## Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ("CCPA")

222.    Defendants conduct alleged in this Complaint and relating to its unlawful access or
failure to correct errors on the Plaintiff's consumer credit report violates the Colorado Consumer
Protection Act because they (1) constitutes unfair and/or deceptive acts or practices; (2) are
committed in the course of Defendants' business; (3) have a pervasive public interest impact and
have the potential to harm a substantial portion of the public; and (4) have caused injuries to the
Plaintiff.

223.    Lakecrest's denial of housing violates CCPA.

234.    Defendants' violations of the CCPA were committed in bad faith, evident in their failure
to correct multiple times.

235.    RealPage exhibits further deceptive behavior by failing to provide Plaintiff information
requested and failing to provide dispute information to CRA as stated.

236.    Plaintiff's injuries were unavoidable as Defendants' hold all the power and unilaterally
control the information reported, the request to correct, and the ability to correct themselves.
Plaintiff has suffered damages as a direct result of Defendant's violations of the CCPA.

237.    Defendants are liable to Plaintiff in amount to be determined at trial, including statutory
treble damages. Plaintiff respectfully requests this Court award them the following damages
pursuant to Colo. Rev. Stat. § 6-1-113(2)(a).  The greater of:

      i.    the amount of actual damages sustained; or

      ii.    five hundred dollars; or

      iii.    three times the amount of actual damages sustained.

238.    Plaintiff respectfully requests that this Court award her fees and costs associated with this action pursuant to Colo. Rev. Stat. § 6-1-113(2)(b) and enjoin Defendants from continued unlawful conduct alleged.

## CLAIM SIXTEEN:

## Violations of Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, et seq. ("UCCC");

239.    By consenting to a consumer credit check though an application for housing, Defendants and Plaintiff participated in a "Consumer Credit Sale" as defined in C.R.S. § 5-1-301(11)(a); thereby a "Consumer credit transaction" C.R.S. § 5-1-301(12).

240.    The written agreement did not permit Defendants to access her consumer report for anything other than determination of housing eligibility in July 2018.

241.    Defendants did not obtain consent from the Plaintiff prior to using her private information to access her consumer report for an additional consumer credit transaction any time after July 2018.

242.    The housing application provided to Plaintiff was deficient, ineffective, deceptive, conducted in bad-faith, unfair, unconscionable, and misleading in that it does not state RealPage could permit unlimited access to the consumer credit report, nor that Lakecrest could access the

243.    Plaintiff's consumer credit report at any time and Plaintiff was not informed of "more than one misdemeanor," unqualifying Plaintiff.

244.    Lakecrest's denial of housing violates UCCC.

245.    By and through conduct of Defendants described in all paragraphs, Defendants conduct can be construed as unconscionable, in violation of C.R.S. § 5-5-109 and C.R.S. § 5-3-210.

246.    The reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

247.    Plaintiff is entitled to damages proven through trial.

248.    Plaintiff is entitled to her reasonable fees and costs.

## CLAIM SEVENTEEN: LAKECREST

### Civil Conspiracy

249.    Unknown Lakecrest Co-conspirators, Unknown Kittredge CO Partners, LLC Co-Conspirators with and/or for Lakecrest agreed by words or conduct to accomplish the unlawful goal of conspiring, and/or accessing, and/or assembling, and/or evaluating, and/or maintaining the Plaintiff's consumer credit report for an undisclosed and unauthorized investigative report; to justify the unlawful denial of housing to the Plaintiff and retaliate against the Plaintiff for her complaint of discrimination through the invasion of privacy and broadcasting of the private information; culminating with the denial of the Plaintiff's ability to make and enforce housing contracts in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1982, through violations of 15 U.S.C. § 1681b; thereby failing to afford the Plaintiff the same options as other applicants.

250.    Once notified of Plaintiff's claims, Unknown KeyBank Co-conspirators and/or named

Defendants conspired to continue the deprivation of Plaintiff's rights in continuing to allow

overdrafts, taking fees for overdrafts, defaming the Plaintiff, and affording the Plaintiff the same

options as other deposit account holders; all to engorge on ill-gotten gains.

251.    Defendants breached the contact between KeyBank and Plaintiff, as well as duties owed

to Plaintiff by KeyBank in order to accomplish depriving Plaintiff of all Rights aforementioned.

252.    As direct and proximate result of Defendants' conspiracy, Plaintiff has suffered actual

damages including but not limited to, loss of employment, housing, creditworthiness, in addition

to *inter alia* emotional distress, physical injuries, mental anguish including humiliation, fear, and

depriving Plaintiff of her privacy and Rights guaranteed by Federal and Colorado Laws.


## CLAIM EIGHTEEN:

## RESPONDEAT SUPERIOR

254.    Kittredge CO Partners, LLC and Defendant Cortland Management, LLC is responsible

for the negligent actions of its employees or agents including but not limited to Ashley Bussard,

Kayla Hedemark, and Co-Conspirators.

255.    RealPage is responsible for the negligent actions of its users, Kittredge CO Partners, LLC

and Defendant Cortland Management, LLC and their employees or agents including but not

limited to Ashley Bussard, Kayla Hedemark, and Co-Conspirators

256.    Defendants were negligent in their care and/or treatment of Plaintiff while acting within

the course of their employment or authority.

257.    As direct and proximate result of the negligent conduct of Defendants, Plaintiff has
suffered injuries and damages as fully described above.

# E. <u>PRAYERS FOR RELIEF - Cont</u>

I.    Permanently enjoin Defendants from committing future violations of FHA, CFPA, FCRA, Regulation V, or any other provision of federal consumer financial law through the implementation of policies and procedures which do not disparately treat or impact minorities;

II.    Award actual damages to the Plaintiff in accordance with 42 U.S.C. § 3631, 15 U.S.C. § 1681, and 28 U.S.C. § 1367.

III.    Award punitive damages to Plaintiff in accordance with 42 U.S.C. § 3631, and 28 U.S.C. § 1367;

IV.    Award Plaintiff costs and fees in accordance with 15 U.S.C. § 5-5-206 and C.R.S. § 4-5-111(c)(d)(e)(f);

V.    All statutory damages according to proof awarded to the Plaintiff, for each separate violation of statute;

VI.    Maximum pre and post judgement interest awarded on all allowable damages for the Plaintiff;

VII.    Special damages awarded to the Plaintiff;

VIII.    Pursuant to C.R.S. 5-5-206. Civil Liability for Discrimination, provide damages of $100,000;

IX.    Award actual and punitive damages to Plaintiff, due to multiple breaches of contract;

X.    Award actual and consequential damages liberally pursuant to C.R.S. §§ 6-1-101 et. seq., 6-1-113, C.R.S. § 4-1-305 and C.R.S. § 4-2-715;

**XI.**    All compensatory damages;

**XII.**    All damages against each Defendant jointly and severally;

**XIII.**    All costs, expenses, and attorney's fees related to this matter;

**XIV.**    Other relief the Court finds appropriate awarded to the Plaintiff.


**Jury Demand**

Plaintiffs seek a jury trial on claims so triable.