IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-00208-WJM-SKC

TIFFANY GRAYS,

    Plaintiff,

v.

KITTREDGE CO PARTNERS, LLC;
CORTLAND MANAGEMENT, LLC;
UNKNOWN KITTREDGE CO PARTNERS CO-CONSPIRATORS;
UNKNOWN CORTLAND MANAGEMENT, LLC CO-CONSPIRATORS;
ASHLEY BUSSARD;
KAYLA HEDEMARK; and
REALPAGE, INC.,

    Defendants.

---

## RECOMMENDATION RE:
## DEFENDANTS' MOTIONS TO DISMISS [#37; #39]

---

In July 2018, Plaintiff Tiffany Grays visited Lakecrest at Gateway Park, a multi-family community in Denver, and completed a rental application for an apartment. [#6 at p.4.][1] Defendants Kittredge Co Partners LLC and Cortland Management, LLC, own and manage the community; Defendant Ashley Bussard was the community manager at the time Plaintiff applied; and Defendant Kayla Hedemark was a leasing consultant (collectively "Apartment Defendants"). [#6-1 at ¶¶8, 10-11.] The rental application specifically authorized

> Cortland to obtain reports from any consumer or criminal record reporting agencies before, during, or after tenancy on matters relating to a lease . . . And to verify, by all available means, the information in this application, including criminal background information . . . .

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF.

1

[*Id.* at ¶28.] The application also stated Cortland would conduct background screenings on all applicants, which included criminal background. [*Id.* at ¶35.] Applications could be denied based on criminal history, and Cortland had a specific policy prohibiting registered sex offenders from living in the community. [*Id.*]

After Plaintiff completed her application, Defendant RealPage, Inc., assembled and provided a credit report on Plaintiff to Apartment Defendants. [*Id.* at ¶22.] Thereafter, Apartment Defendants denied Plaintiff's application allegedly because she had more than one misdemeanor conviction on her record. [*Id.* at ¶¶10-11.] According to the Amended Complaint ("AC"), Bussard helped Plaintiff complete her application and was aware of Plaintiff's race (African-American), and Bussard made the decision to deny Plaintiff's application. [*Id.* at ¶¶6, 10.] Hedemark informed Plaintiff of the denial. [*Id.* at ¶11.]

Plaintiff filed this action asserting 18 separate claims for relief. Four of those claims arise under federal statutes and implicate federal question jurisdiction. 28 U.S.C. § 1331. The remining fourteen claims arise under Colorado state law, and therefore, are before the Court based on supplemental jurisdiction. 28 U.S.C. § 1367.

Apartment Defendants and RealPage have separately moved to dismiss this action in its entirety arguing Plaintiff's failure to state a claim. Plaintiff contends she has sufficiently alleged each claim. With her response, she attaches evidence to support her arguments.[2] The Court, however, declines to consider the extraneous

---

[2] Grays proceeds *pro se*; thus, the Court liberally construes her pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court does not act as her advocate.

evidence attached to her responsive pleading. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002) (courts may only consider external documents referenced in the complaint and found to be central to the plaintiff's claim). Having considered both Motions to Dismiss and the related briefing, the AC, and the relevant law, the Court RECOMMENDS the Motions be GRANTED.

### A.   STANDARD OF REVIEW

The Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly-Iqbal* pleading standard requires that courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory

---

*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). In other words, the court strips the complaint bare of the deficient allegations and determines whether the remaining allegations plausibly state a claim for relief.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id.* If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

### B. ANALYSIS

Plaintiff's federal claims arise under the following: (1) the Fair Housing Act ("FHA"); (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1982; and (4) the Fair Credit Reporting

4

Act ("FCRA").[3] The AC alleges the first three against Apartment Defendants only, and asserts the fourth against both Apartment Defendants and RealPage.

### 1. Alleged Violations of the FHA, 42 U.S.C. § 3601, *et seq.*

The AC alleges Apartment Defendants violated the FHA by denying Plaintiff's application based on her multiple misdemeanor convictions. In support of these allegations, the AC cites and relies on a document from the Department of Housing and Urban Development ("HUD") offering guidance on the use of criminal records by providers of housing and in real-estate related transactions. [#6-1 at p.2 nn.1-3.] *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (courts may consider documents incorporated by reference or attached to the complaint, documents central to plaintiff's claim, and matters subject to judicial notice without converting a motion to dismiss into one for summary judgment). That document cites national statistics suggesting the use of criminal records by landlords to evaluate prospective tenants disproportionately affects African-Americans and Hispanics. [*Id.*] Relying on this national data, the AC alleges Apartment Defendants' policy of denying housing to applicants with "more than one misdemeanor" ("misdemeanor policy") has a disparate impact on minorities in violation of the FHA. [#6-1 at ¶¶52-69.]

Section 3604 of the FHA prohibits discrimination in rental housing due to race. *See* 42 U.S.C. § 3604(a) (making it unlawful "[t]o refuse to sell or rent ... or otherwise make unavailable or deny, a dwelling to any person because of race, color, ... or

---

[3] Although presented as a single claim, Plaintiff's FCRA claim alleges numerous wrongdoings under the Act.

national origin."). Discrimination may occur either by disparate treatment or disparate impact.[4] *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995).

To establish a prima facie case of disparate impact discrimination under the FHA, a plaintiff must show a specific policy caused a significant disparate effect on a protected group. *See Mountain Side Mobile Estates Partnership v. Sec. of Housing and Urban Dev.*, 56 F.3d 1243, 1251 (10th Cir. 1995). "This is generally shown by statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1299 (2016) (quoting *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 922 (10th Cir. 2012)). "Moreover, a disparate impact claim must allege a pattern or practice of discrimination, not merely an isolated instance of it." *Id.*

Here, the AC relies almost exclusively on national statistics to infer a causal connection between the misdemeanor policy and an alleged pattern of discrimination by Apartment Defendants. However, even the HUD document cited in the AC states a plaintiff must provide "evidence proving that *the challenged practice* actually or predictably results in a disparate impact." *Office of General Counsel Guidance on*

---

[4] The Court does not construe the AC to allege a separate disparate treatment claim under the FHA. This is in part because the AC alleges, for example, "Ms. Bussard's disparate treatment of the Plaintiff, *through the disparate impact* of Ms. Bussard's and Lakecrest's undisclosed policies and procedures." [#6-1 at ¶1 (emphasis added).] Further, the weight of the allegations in the AC support only a disparate impact theory. To the extent the AC could be construed as also asserting a disparate treatment theory, it fails to plausibly do so for the same reasons Plaintiff's §§ 1981 and 1982 claims fail.

*Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT at p. 3 (April 4, 2016) (emphasis added).[5] And it recognizes that "determining whether a policy or practice results in a disparate impact is ultimately a fact-specific and case-specific inquiry." *Id*. at p.4.[6]

The AC lacks factual allegations of localized data or data specific to Apartment Defendants and their misdemeanor policy. For example, it contains no allegations regarding "applicant data, tenant files, census demographic data or localized criminal justice data." *Id*. Rather, the AC only generally alleges the misdemeanor policy "has resulted in minorities and African Americans being disproportionately denied housing for reasons not based on creditworthiness or other objective data when compared to non-minorities and whites." [#6-1 at ¶37.] But this allegation is conclusory; it lacks specificity and amounts to little more than a legal conclusion masquerading as a fact. Plaintiff's national statistics, without more, are insufficient to plausibly allege this misdemeanor policy had a discriminatory effect on persons of color in Colorado.

Even if statistical data is not required to overcome a motion to dismiss, Plaintiff's allegations still fail to nudge this claim "'across the line from conceivable

---

[5] https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF (last visited February 1, 2021).

[6] The Court may take judicial notice of this document without converting the analysis to one for summary judgment. *See New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (taking judicial notice of two federal agency websites).

7

to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, (10th Cir. 2008) (quoting *Twombly*, 550 at 570). Apart from her singular experience, the AC does not adequately allege facts to reasonably support the inference of a "pattern or practice of discrimination," as required. *See J.V.*, 813 F.3d at 1299; *see also Texas Department of Housing and Community Affairs v. Inclusive Communities Project*, 135 S. Ct. 2507, 2523 (2015) ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.").

In her Response, Plaintiff (for the first time) names four individuals of color whose applications were allegedly denied based on their criminal records. [#46 at p.7.] But Plaintiff may not amend the AC via her Response.[7] Consequently, the Court concludes Plaintiff has failed to state an FHA claim based on disparate impact and recommends this claim be dismissed. *See Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 28–29 (D.D.C. 2017) (citing *Inclusive Communities*, 135 S.Ct. at 2523) ("There is a robust causality requirement at the prima facie stage" of an FHA disparate impact claim.).

---

[7] Even if the Court construed the Response as a request to amend her complaint, the allegations regarding these individuals are vague and conclusory. They contain no specifics regarding the nature of their convictions (felony or otherwise), the number of misdemeanor convictions (if any), or whether there were other contributing factors resulting in the denial of their respective rental applications. And although it has no impact on this Court's conclusions, Plaintiff's own evidence suggests one of these individuals was actually approved for an apartment. [#41-2 at p.3.] Amendment to add these individuals would be futile in the face of these scant allegations.

### 2.     42 U.S.C. §§ 1981, 1982

A claim under 42 U.S.C. § 1981 is separate and distinct from a claim under the FHA. *Jackson v. Park Place Condominiums Ass'n, Inc.,* 619 F. App'x 699, 702-03 (10th Cir. 2015) (unpublished) (a claim of housing discrimination may be based on "either 42 U.S.C. § 1981, which prohibits racial discrimination in the making, performance, modification, and termination of contracts, . . . 42 U.S.C. § 1982, which prohibits racial discrimination in the sale and rental of property, or 42 U.S.C. § 3604(b) of the Fair Housing Act (FHA)"). "Section 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981).

To assert a claim under § 1981, Plaintiff must demonstrate: "(1) that [she] is a member of a protected class; (2) that [Defendants] had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117-18 (10th Cir. 2001). Further, "a plaintiff must initially plead and ultimately prove that, *but for race*, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis added).

Similarly, § 1982 guarantees all citizens of the United States "the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey

9

real and personal property." *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441-43 (1968) (§ 1982 forbids both official and private racially discriminatory interference with property rights); *see also Tennessee v. Lane*, 541 U.S. 509, 561 (2004) (Scalia, J., dissenting) (§ 1982 "ban[s] public or private racial discrimination in the sale and rental of property"). Like claims under § 1981, the Supreme Court has repeatedly "held that a claim arises under § 1982 when a citizen is not allowed to acquire property . . . *because of color.*" *Comcast Corp.*, 140 S. Ct. at 1016. *See also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 447 (2008) (Supreme Court "precedents have long construed §§ 1981 and 1982 similarly.").

Here, apart from the allegation Bussard knew "Plaintiff's color and race prior to making the adverse decision," the AC contains no factual allegations to plausibly allege an intent on the part of Defendants to discriminate against Plaintiff based on her race. [#6-1 at ¶10.] To be sure, the AC repeatedly alleges the denial of her application was based on the misdemeanor policy and her criminal record. [*Id.* at ¶¶11, 33, 37.] Thus, the AC itself alleges nondiscriminatory reasons for Apartment Defendants' denial of Plaintiff's rental application. Any passing reference in the AC to discriminatory intent is just that—conclusory allegations unsupported by factual allegations from which discriminatory intent may be reasonably inferred. [*See Id.* at ¶¶40, 41, 66.] While "[s]pecific facts are not necessary," at least some facts are. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Consequently, Plaintiff fails to plead a prima facie case under either statute. *Iqbal*, 556 U.S. at 678 (Plaintiff's "unadorned,

10

the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to state a claim upon which relief may be granted.).

In her Response, Plaintiff argues the misdemeanor policy is simply a pretext for race-based discrimination. [#46 at p.8] But the Court does not reach the question of pretext because the AC does not allege pretext at all, and ultimately, Plaintiff's allegations fail to plausibly allege discriminatory animus in the first instance. Also, the Court cannot simply ignore concrete factual allegations. The AC is replete with allegations that Plaintiff's application was denied based on the facially-neutral misdemeanor policy and her misdemeanor convictions. Indeed, these allegations are the basis of the FHA claim. And denial of a rental application based on a criminal record is not actionable under Sections 1981 or 1982. *See Adetoro v. King Abdullah Acad.*, No. 1:19-CV-01918 (TNM), 2020 WL 7122858, at \*5 (D.D.C. Dec. 4, 2020) (plaintiffs' allegations included a nondiscriminatory reason, and therefore, they could not state a claim under § 1981).

Based on her own allegations, the AC fails to plausibly allege "but for" causation; therefore, the § 1981 and § 1982 claims should also be dismissed.

### 3. Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

The FCRA was enacted to ensure the accuracy and fairness of credit reporting. The FCRA "imposes [distinct] obligations on three types of entities: credit reporting agencies [CRAs], users of consumer reports[,] and furnishers of information to [CRAs]." *Jarrett v. Bank of Am.*, 421 F. Supp.2d 1350, 1353 (D. Kan. 2006) (citing 15 U.S.C. § 1681, *et seq*.). In her fourth claim, Plaintiff contends Apartment Defendants

11

(as "users" of reports) and RealPage (as a "CRA" and "reseller" of reports) violated numerous provisions of the FCRA.

The only factual allegation in the AC to conceivably fall under the FCRA is Plaintiff's contention that in 2019, Apartment Defendants requested, and RealPage provided them, a new credit report on Plaintiff for "impermissible purposes." [#6-1 at ¶¶7, 96-98, 110-118.] The AC alleges Plaintiff did not authorize this 2019 credit report, and Apartment Defendants obtained the report for use in defending itself before the Colorado Civil Rights Division based on Plaintiff's charge of discrimination filed at the time. [*Id.*]

To establish a violation of the FCRA for obtaining a credit report without a proper purpose, a plaintiff must prove (1) there was a consumer report; (2) defendant used or obtained it; (3) defendant did so without a permissible statutory purpose; and (4) defendant was negligent (or willful) in doing so. *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002), abrogated on other grounds by *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

To the extent Plaintiff argues a report can never be obtained without her permission, her argument is contradicted by the statute. §1681b(a)(1)-(6). And even assuming Apartment Defendants had no proper purpose for pulling her report in 2019, the allegations in the AC are still insufficient because there are no factual averments to plausibly establish willful or negligent conduct on the part of Apartment Defendants or RealPage concerning the furnishing and obtaining of the 2019 credit report—the fourth element of the prima facie case. The AC only offers conclusions

12

supported by the recitation of legal elements. [See #6-1 at ¶¶99, 100, 101(g), 104.] It alleges no facts from which to infer the Defendants' acts or omissions were the result of negligence, or the result of Defendants' possessing the requisite scienter to suggest their conduct was unlawful.

Plaintiffs other alleged violations of the FCRA are difficult to discern. Many of the additional allegations and assertions of wrongdoing under the FCRA claim are leveled at the "Defendants" collectively without distinction between which of the five Defendants is alleged to have performed which specific acts or omissions, if any. [#6-1 at ¶¶99, 100, 110, 111, 116, 133.] This type of group pleading—which fails to differentiate between the Defendants and their respective acts or omissions—violates Rule 8. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *Chambers v. Cooper*, No. 13–cv–00393, 2014 WL 561371, at *1 (D. Colo. Feb. 12, 2014). This is basis alone to recommend dismissal of any additional claims embedded under the FCRA moniker because the approach renders the pleading legally deficient. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated.").

Moreover, the AC seems to allege a variety of FCRA violations. But given the manner in which this claim is organized, it is difficult to identify which allegations or facts are meant to support the various alleged violations of the FCRA. *See, e.g., Bickerstaff Clay Prods. Co. v. Harris Cty.*, 89 F.3d 1481, 1485 n.4 (11th Cir.1996)

13

("The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief."). In this regard, many of the allegations are confusing, redundant, contain cross-references, or are presented with such little context as to be nearly nonsensical. [*See, e.g.,* #6-1 at ¶¶98-104.] These allegations simply do not lend themselves to stating additional plausible violations of the FCRA. *See Mwangi v. Norman*, No. 16-cv-0002-GPG, 2016 WL 153220, at *1 (D. Colo. Jan. 13, 2016) ("Prolix, vague, or unintelligible pleadings violate Rule 8."). This is beside the point that many of Plaintiff's allegations are simple recitations of sections of the FCRA with the conclusory assertion Defendants failed to comply with those mandates. [#6-1 at ¶¶101(f), (g), (h), 102, 104, 105.]

For all these reasons, the Court recommends Plaintiff's claims which purport to assert violations of §§ 1681c(a)(2), 1681e(e), 1681g(c), 1681q, and 1681r of the FCRA be dismissed. [#6-1 at ¶¶ 101(d), (e), (g), (h); 102.] The Court also recommends dismissal of Plaintiff's purported claims under §§ 1681b(c)(2)-(3),[8] 1681c(c)(1),[9] and

---

[8] Section 1681b(c) is limited to the furnishing of credit reports "in connection with credit or insurance transactions." No credit or insurance transactions are implicated by the facts of this case as alleged in the AC.

[9] Section 1681c enumerates information that should be excluded from consumer reports. Plaintiff argues Defendants violated § 1681c(c)(1) by "using criminal record information beyond the 7-year period" and by using the date of conviction as opposed to the date of charging. [#61-1 at ¶98.] But subsection (c)(1) has no bearing on the allegations of this case. It applies only to "accounts placed for collection or charged to profit and loss;" "any other adverse item of information;" and, the "name, address, and telephone number of any medical information furnisher." *Id.* It specifically excludes "records of convictions of crimes which antedates the report by more than seven years." *Id.* at § 1681c(a)(5).

1681d(a)(1),[10] because these provisions are not implicated by any facts alleged in the AC.

### 5. The 14 State Law Claims

Plaintiff's other 14 claims are state law claims. Because the Court recommends dismissal of the federal law claims over which it has original jurisdiction, the Court further recommends dismissal of the state law claims, without prejudice, under 28 U.S.C. § 1367(c)(3).

\*   \*   \*

For the foregoing reasons, the Court RECOMMENDS Plaintiff's claims 1 – 4 be dismissed for failure to state a claim up on which relief can be granted. And because this Court's jurisdiction is based on Plaintiff's federal causes of action, it is further RECOMMENDED the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining fourteen state law claims.

DATED:   February 17, 2021

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

---

[10] Section 1681d of the FCRA prohibits the procurement or preparation of an "investigative consumer report" unless certain disclosures are made to the subject of the report. An investigative consumer report is a consumer report containing information obtained through personal interviews. *See* 15 U.S.C. § 1681a(e). The AC contains no allegations RealPage prepared its report through the use of personal interviews. Thus, this section is also inapplicable to this case.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, and waives appellate review of both factual and legal questions. *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985); *Makin v. Colorado Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).